## *In re* GINIVALLI.

1. PARDONS AND PAROLES—VIOLATION OF PAROLE—EXPIRATION OF MAXIMUM SENTENCE.

   A parolee who has violated his parole may be required to serve the remainder of his sentence after the expiration date of his maximum term as originally imposed by the court (CL 1929, § 17525).

2. HABEAS CORPUS—PLEADING—RECORD—PAROLE VIOLATOR.

   Allegation in defendant warden's answer and return that after habeas corpus petitioner's parole violation in 1932 nothing was heard of him, from him or others, until 1947 *held,* not controverted by anything in record presented.

3. PARDONS AND PAROLES—VIOLATION—ARREST—DELAY—DUE PROCESS.

   Arrest after an 18-year delay, occasioned by parole violator's failure to report to out-of-State parole officer and keep Michigan authorities advised as to his whereabouts as required by the terms of his parole, and his concealment thereof from them, did not constitute a denial of due process, where there was no indefinite, whimsical or capricious withholding of action by the Michigan authorities (US Const, am 14; CL 1929, § 17525).

---

REFERENCES FOR POINTS IN HEADNOTES

[1–5]  39 Am Jur, Pardon, Reprieve, and Amnesty §§ 94, 95.
[1–5]  Parole as suspending running of sentence. 28 ALR 947.
Right to notice and hearing before revocation of suspension of sentence, parole, or conditional pardon.  54 ALR 1471; 132 ALR 1248.
Sentence for new offense committed while accused was on parole or conditional release as concurrent or consecutive.  116 ALR 811.

4. SAME—VIOLATION OF PAROLE—ARREST—INDETERMINATE SENTENCE —STATUTES—CONSTITUTIONAL LAW—DUE PROCESS.

Statute authorizing arrest of a parole violator, his treatment as an escaped prisoner owing service to the State and declaring that the time elapsed between declared delinquency and arrest should not be counted as part of the time served and provision of State Constitution authorizing indeterminate sentences are not violative of provision of Constitution of the United States, particularly the due process clause (US Const, art 6, cl [2]; am 14; CL 1929, § 17525).

5. SAME—VIOLATION—ARREST AFTER EXPIRATION OF MAXIMUM TERM.

Parole violator arrested after expiration of maximum term as originally prescribed by the court then became liable to serve unexpired maximum term, eliminating from consideration in the computation thereof the period between the date of his declared delinquency as a parole violator and the date of his arrest (CL 1929, § 17525; PA 1937, No 255, ch 3, § 8; CL 1948, § 791.36).

Habeas corpus by Frank Ginivalli against Julian N. Frisbie, warden of the State prison of southern Michigan, with accompanying certiorari to obtain his release. Submitted October 31, 1952. (Calendar No. 45,409.) Writ dismissed March 10, 1953.

*Frank Ginivalli, in pro. per.*

*Frank G. Millard,* Attorney General, *Edmund E. Shepherd,* Solicitor General, and *Perry A. Maynard,* Assistant Attorney General, for the people.

DETHMERS, C. J. A writ of habeas corpus, with ancillary writ of certiorari, issued to inquire into the legality of plaintiff's detention in State prison.

Plaintiff's petition and defendant's answer and return disclose pertinent facts as follows: Plaintiff was sentenced on February 28, 1930, to serve a prison term of not less than 2 nor more than 15 years. On April 18, 1932, he was paroled to Cook county, Illi-

nois, to report there to Dr. F. Emery Lyon, of the Central Howard Association, as first friend and adviser and to work for A. M. Schaffer at the G.M.S. Finance Company in Chicago. Although he falsely reported to Dr. Lyon on April 19, 1932, that he had done so, he never actually went to work for Schaffer nor did he at any time thereafter make monthly reports to Dr. Lyon, all as required by the terms of his parole. On July 28, 1932, Dr. Lyon advised the Michigan supervisor of paroles concerning plaintiff's violation of parole and on October 23, 1933, a warrant therefor was issued fixing the date of plaintiff's delinquency as of April 30, 1932. After being advised of the parole violation Michigan authorities heard nothing from or about plaintiff, nor were they aware of his whereabouts, until June 5, 1947, at which time they received from Illinois authorities a transcript of plaintiff's criminal record, which, together with his subsequent admissions, disclosed that after his Michigan parole he had committed 3 different felonies in Illinois for which he was, in each instance, sentenced to prison in Illinois, the last sentence having been imposed on March 21, 1947, for a term of not less than 3 nor more than 5 years. On June 30, 1947, Michigan authorities caused a second warrant for violation of parole to issue, again fixing the date of plaintiff's delinquency as of April 30, 1932. On December 20, 1950, when plaintiff completed his last term of imprisonment in Illinois, he was released to Michigan authorities, after extradition proceedings were duly had. On December 28, 1950, he was returned to custody at the State prison at Jackson where he still remains.

Claims concerning alleged illegality of his return to Michigan, made in his petition, have since been abandoned by plaintiff. The sole question presented here is whether plaintiff may be required, for violation of parole, to serve the remainder of his sentence

after February 28, 1945, the expiration date of his maximum term as originally imposed by the court.

Plaintiff insists that he may not be required to serve after the expiration date of his original maximum sentence, citing *Commonwealth, ex rel. Tate, v. Burke,* 364 Pa 179 (71 A2d 241). Decision in that case was controlled by what the court found to be the clear, unambiguous provisions of the Pennsylvania statute. There is no similarity between its provisions and those of the Michigan statute on the point in controversy.

Plaintiff also quotes from the syllabus and opinion of the United States District Court, N.D. Illinois, E.D. in *United States, ex rel. Howard, v. Ragen,* 59 F Supp 374, the following:

"The parole officers of State of Illinois in exercising right to reimprison parolee who has violated terms of his parole may not withhold such action indefinitely and exercise it at some remote time, since exercise of such power at whim or caprice of parole officers would deprive parolee of 'due process of law.' " (Syllabus 3.)

"It is obvious that such a power cannot coexist with due process of law because under it the liberty of a citizen is not dependent upon any process of law whatsoever, but only the whim or caprice of the parole board in its decision to imprison or not imprison a parole violator."

Decision in that case, by a trial court, was predicated on the admission that the Illinois authorities, at different times during the 15-year period between petitioner's parole violation and his ultimate arrest therefor, knew of his whereabouts and could have taken him into custody but, upon inquiry by other States, declined to incur the expense of doing so. In the instant case, although plaintiff speculates that Michigan authorities must have had notice of his several imprisonments from time to time in Illinois

and could have filed detainers against him on those
occasions and taken him into custody upon his re-
lease from prison there, and contends that certain
exhibits in the case substantiate his claim in that
regard, nevertheless the record before us discloses
nothing to controvert the allegation in defendant's
answer and return that after plaintiff's parole viola-
tion in April of 1932 "nothing was heard of petition-
er, from him, or others, until June 5, 1947." His
arrest by Michigan authorities followed at the first
opportunity thereafter when he became available to
them upon release from prison in Illinois. As dis-
tinguished from *United States, ex rel. Howard,* v.
*Ragen, supra,* there was no indefinite withholding
of action by Michigan authorities nor was plain-
tiff's liberty made to depend upon their whim or
caprice. The 18-year delay in plaintiff's arrest for
parole violation was occasioned by his own ac-
tions alone, namely, failure to report and keep Mich-
igan authorities advised as to his whereabouts, as
required by the terms of his parole, and his con-
cealment thereof from them. Accordingly, the long
period of inaction followed by plaintiff's eventual
arrest and imprisonment did not constitute a de-
nial of due process. That the statute (hereinafter
considered), under which the Michigan authori-
ties proceeded, and Michigan Constitution of 1908,
art 5, § 28, authorizing its enactment, are not in
conflict with article 6, clause 2, or the Fourteenth
Amendment of the Constitution of the United States
was held by this Court in *Re Holton,* 304 Mich 534.

*People* v. *Felker,* 61 Mich 110, and *In re Allison,*
322 Mich 491, cited by plaintiff, are not in point.

In 1930, when the crime was committed and the
original sentence imposed, and in 1932 when the
violation of parole occurred, the applicable statute
in effect was CL 1929, § 17525, which read as follows:

"A convict violating the provisions of his parole and for whose return a warrant has been issued by the warden or superintendent shall, after the issuance of such warrant be treated as an escaped prisoner owing service to the State, *and shall be liable, when arrested, to serve out the unexpired portion of his maximum imprisonment, and the time from the date of his declared delinquency to the date of his arrest shall not be counted as any part or portion of the time to be served.*" (Italics supplied.)

The above section was repealed by PA 1937, No 255, but chapter 3, § 8, of the latter contained provisions almost identical thereto, which, in turn, were retained in chapter 2, § 36 (CL 1948, § 791.36 [Stat Ann 1951 Cum Supp § 28.2176]) of PA 1947 (2d Ex Sess), No 4, which repealed said Act 255. The effect of the quoted statutory provisions has been considered by this Court in *Re Holton, supra,* and *In re Davis,* 312 Mich 154. In *Holton* we held that the time following the date of petitioner's parole violation became so-called "dead time," that such "dead time" ended, after issuance of a warrant for the parole violation, when the authorities had it in their power to place petitioner in actual confinement therefor, in State prison, and that the "dead time * * * should not be credited to the remainder of petitioner's sentence." In *Davis* we said:

"The time from the date of his declared delinquency, May 4, 1942, to the date of his voluntary surrender, April 27, 1943, is considered 'dead time' and should not be credited to the remainder of petitioner's sentence."

The portion of the quoted statutory provisions set forth in italics clearly makes plaintiff liable to serve out the unexpired portion of his maximum imprisonment and eliminates from the computation thereof the period from his parole violation to the time of his.

arrest therefor. Accordingly, he was liable to serve, after his arrest in December of 1950, for a period of time equal to that portion of his original maximum term which remained unserved on the date of his parole violation in April of 1932. Consequently, plaintiff is not, at this time, entitled to be released.

Writ dismissed.

Adams, Butzel, Carr, Bushnell, Sharpe, Boyles, and Reid, JJ., concurred.