*In re* COLIN.

1. PARDONS AND PAROLES—REPORT TO PAROLE OFFICER.
    A parolee who fails to report to person to whom he is paroled, as required by the terms of his parole, violates the parole.

2. SAME—REIMPRISONMENT OF VIOLATOR—DUE PROCESS.
    The parole officers of the State may not withhold exercise of their right to reimprison a parole violator indefinitely and exercise it at some remote time, the exercise of such power at whim or caprice of parole officers operating to deprive the parolee of "due process of law."

3. SAME—DEAD TIME.
    The so-called "dead time" of a parole violator ends when the warrant for the parole violation is issued and the parole board has it within its power to reimprison the parolee and no question is raised as to whether courts of the asylum State will review the motives or good faith of the demanding States or consider whether they will deal fairly with a fugitive.

4. SAME—REIMPRISONMENT.
    Parolee who was reimprisoned in this State after parole violation long after the maximum sentence had expired, making due allowance for period when his whereabouts were unknown to State authorities, was unlawfully detained.

Habeas corpus with accompanying certiorari by Bernard Colin to obtain his release from State Prison of Southern Michigan. Submitted August

REFERENCES FOR POINTS IN HEADNOTES

[1–4] 39 Am Jur, Pardon, Reprieve, and Amnesty § 81 *et seq.*
[1–4] Conditional pardon.  60 ALR 1410.
Right to notice and hearing before revocation of suspension of sentence, parole, or conditional pardon.  54 ALR 1471; 132 ALR 1248; 29 ALR2d 1074.

12, 1953. (Calendar No. 45,743.) Prisoner discharged October 5, 1953.

*Bernard Colin in propria persona.*

*Frank G. Millard,* Attorney General, *Edmund E. Shepherd,* Solicitor General, and *Perry A. Maynard,* Assistant Attorney General, for defendant.

Dethmers, C. J. Plaintiff was sentenced on November 6, 1925, to serve a prison term of not less than 9 months nor more than 5 years. On October 6, 1926, he was paroled to Dr. F. Emery Lyon, as first friend and adviser, in Chicago. He made 1 report to Dr. Lyon, then absconded and made no further reports, thus violating the terms of his parole. On March 2, 1927, a warrant for parole violation was issued. On March 29, 1934, while imprisoned at Folsom prison in California, plaintiff wrote Michigan parole authorities, asking them to lift their detainer against him filed at the California institution and received a reply that decision on his request must await official notice of his impending release from Folsom. On June 19, 1934, Michigan State police were informed by the warden of Folsom prison that plaintiff would be released therefrom on July 22, 1934, and that deportation proceedings by the United States immigration service impended. Michigan parole authorities replied that deportation of plaintiff was agreeable to them. Defendant's answer alleges, in partial explanation of its disinclination to apprehend plaintiff at that time, that in 1934 Michigan was without funds to return prisoners from great distances. In January of 1936 the Michigan supervisor of paroles was notified by the warden of the United States penitentiary at Fort Leavenworth, Kansas, that plaintiff was there imprisoned, that his term would expire on September

20, 1937, and that Michigan would be notified 30 days prior to his release "in order that you may have an officer here to take him into custody." On August 25, 1937, the Michigan supervisor replied to the warden at Fort Leavenworth prison thanking him for the notification and advising that "Michigan will be unable to take this man into custody on that date. Our warrant will remain in effect, however, and subject will be returned in the event he is apprehended in Michigan or vicinity." Defendant's answer alleges in that connection that Michigan was still without funds at that time (1937) to transfer parole violators from long distances as it does today; and that both in 1934 and in 1937 Michigan did not refuse to receive plaintiff or waive its claim on him, but merely declined to spend the money necessary to send officers long distances to get him.

On December 12, 1950, Michigan parole authorities executed a second warrant for parole violation after receiving from a United States district attorney in California an inquiry concerning plaintiff's status. In May, 1951, they learned that he was in custody in California and Michigan officers went there with extradition papers and returned him to this State. In September, 1951, the Michigan parole board rescinded his parole and passed his case to expiration of the maximum sentence, which they assert will not occur until July 11, 1954. We allowed habeas corpus and the ancillary writ of certiorari to inquire into the legality of plaintiff's detention in State prison.

Plaintiff contends that he is unlawfully imprisoned, citing as authority for his contention *United States, ex rel. Howard,* v. *Ragen,* 59 F Supp 374, and quoting from its syllabus and opinion the following:

"The parole officers of State of Illinois in exercising right to reimprison parolee who has violated

terms of his parole may not withhold such action indefinitely and exercise it at some remote time, since exercise of such power at whim or caprice of parole officers would deprive parolee of 'due process of law.' " (syllabus 3.)

"It is obvious that such a power cannot coexist with due process of law because under it the liberty of a citizen is not dependent upon any process of law whatsoever, but only the whim or caprice of the parole board in its decision to imprison or not imprison a parole violator."

Defendant seeks to distinguish this from the *Ragen Case* on the score that in the latter the Illinois authorities took the position that they would not incur the expense of apprehending the parolee so long as he stayed out of the State of Illinois and that they declared such to be their policy. The above quoted language from the August 25, 1937, letter of the Michigan supervisor of paroles, coupled with the allegation in defendant's answer that parolees were not being returned from distant places at that time for financial reasons, scarcely supports the claimed distinction.

Defendant's chief reliance is placed upon our holding in *Re Ginivalli,* 336 Mich 101, and the fact that plaintiff violated his duty, as in our opinion in that case declared, to keep Michigan authorities advised of his whereabouts. In that case we distinguished the *Ragen Case* on the ground that the Michigan authorities were not shown to have had knowledge of Ginivalli's whereabouts or to have had it within their power to take him into custody prior to the time when they actually did so. In that respect the facts at bar resemble those in *Ragen* rather than in *Ginivalli.* While it was plaintiff's duty to keep Michigan authorities advised of where he was, his failure to do so did not, as in *Ginivalli,* keep Michigan authorities from knowing where he was on at least 3 occa-

sions. They had it in their power to take plaintiff into custody, both in 1934 and in 1937, but declined to do so in the interests of economy.

In point is the following from *In re Davis,* 312 Mich 154:

"*In re Holton,* 304 Mich 534, we said 'the period of so-called "dead time" ended when the warrant for parole violation was issued, as at that time the parole board had it within its power to place petitioner in actual confinement in the State prison at Jackson.' Under the facts in this case the parole board's first opportunity to place petitioner in actual custody was when petitioner called at the Lansing office following his discharge from the RCAF."

The first warrant for parole violation was issued in 1927 and Michigan parole officers had it within their power to take plaintiff into custody in 1934 and 1937. Applying what we said in *Davis,* the period of so-called "dead time" ended then and "live time" began running on plaintiff's maximum sentence, with the result that it has long since expired. It follows that his present imprisonment is without warrant in law. In so holding, we are not unmindful of decision in *Ryan* v. *Sheriff of Leavenworth County,* 175 Kan 159 (259 P2d 172), where the result, urged by defendant to be the opposite of that here announced, was expressly predicated on the finding that the parolee's claim that the parole authorities had known where he was on several previous occasions but declined to pick him up rested solely on his testimony, uncorroborated by that of other witnesses. In the instant case defendant admits such facts, thus distinguishing it from *Ryan.* Not involved in this case, as in *Ryan* and others cited by defendant, is the question of whether courts of the asylum State will review the motives of the governors in extradition proceedings, inquire into the good faith of demanding States

or consider whether they will deal fairly with a fugitive.

Plaintiff is discharged.

Adams, Butzel, Carr, Bushnell, Sharpe, and Reid, JJ., concurred with Dethmers, C. J.

Boyles, J., concurred in the result.