*In re* CARPENTER.

1. Pardon—Reimprisonment of Parole Violator.
   Parole officers may not withhold exercise of the right to reimprison a parole violator indefinitely and exercise such right at some remote time at the whim or caprice of the parole officers.

2. Same—Parole Violator—Names.
   Plaintiff whose second parole on July 14, 1949, was reported as violated on July 22, 1949, and parole violation warrant issued a week later but apprehension not made until October 8, 1955, was properly reimprisoned after preferment of criminal charges, where corrections department's allegation in its answer that its officers had no knowledge or information concerning plaintiff's whereabouts in the interim is not controverted, plaintiff's original arrest, conviction and parole being entitled under a given name different than his true name.

3. Same—Hearing on Parole Violation.
   Claim that parole board did not accord plaintiff a hearing on parole violation charges was without merit, where the cor-

---

REFERENCES FOR POINTS IN HEADNOTES
[1–3] 39 Am Jur, Pardon, Reprieve and Amnesty § 95.
[4] 20 Am Jur, Evidence § 1036 *et seq.*

rections department's return to ancillary writ of certiorari in habeas corpus proceeding establishes that plaintiff had plead guilty to 7 counts of the charge against him.

4. HABEAS CORPUS—EXHIBITS.

Contention that exhibit, accompanying department of corrections' return to ancillary writ of certiorari in habeas corpus proceeding is not a true, full and complete copy *held*, without merit, where it differs in no material way from the original in the official files deposited with the Supreme Court.

Habeas corpus with ancillary writ of certiorari by Harvey Carpenter to obtain release from the State Prison of Southern Michigan. Submitted April 11, 1957. (Calendar No. 47,034.) Writ dismissed June 3, 1957.

*Harvey Carpenter, in propria persona.*

*Thomas M. Kavanagh,* Attorney General, and *Edmund E. Shepherd,* Solicitor General, for the people.

KELLY, J. A writ of habeas corpus and ancillary writ of certiorari was issued by this Court to inquire into the legality of plaintiff's detention by the warden of the State prison of southern Michigan.

Plaintiff was convicted of breaking and entering in the nighttime and was sentenced on May 20, 1940, to a prison term of 4 to 15 years.

Plaintiff was paroled November 19, 1943, to Detroit, for a period of 2 years. He violated his parole on May 5, 1944, and on September 18, 1948, was apprehended and returned to the prison as a parole violator.

On July 14, 1949, plaintiff was again paroled for 2 years, on condition that he at once take up his residence with his brother in the city of Detroit, and that he immediately report his arrival to his parole officer at Detroit and file regular reports thereafter.

Plaintiff's parole officer on July 22, 1949, reported

to the department of corrections that plaintiff had violated the terms of his parole, and the department on July 29, 1949, issued a parole violation warrant for the apprehension of plaintiff.

Plaintiff was arrested at 5106 Lincoln avenue, in the city of Detroit, on October 8, 1955, by the metropolitan police, upon charges of criminal offenses preferred by one Clyde Scott of the same address. He was held by the Detroit police until the following day, October 9th, when he was released and placed in the custody of parole officers to answer to the charge of parole violation. Plaintiff pleaded guilty to 7 counts of parole violation, and the parole board passed his case for consideration in 3 years, requiring him meanwhile to continue serving his maximum prison term.

Plaintiff contends that the parole board erred in refusing to count as served thereon the "dead time" from the date of plaintiff's delinquency (July 14, 1949) to the date of his arrest (October 8, 1955), and relies on this Court's decision in *In re Colin*, 337 Mich 491.

The Michigan department of corrections' return to the ancillary writ of certiorari states:

"From the issuance of said parole violations warrant on July 29, 1949 to the 9th day of October, 1955 the corrections department and its officers had no knowledge or information concerning the whereabouts of plaintiff and during said period of time the latter failed to report to his parole officer or any other person in authority as to his place of residence or employment. And the department denies that during the interval between July 14, 1949 and May 18, 1951 its parole officers well knew that plaintiff continued to reside at 1248 Spruce street with his brother."

In his petition, plaintiff states that on release he "reported to the parole officer in Detroit on the 14th day of July, 1949. Finding the parole officer absent,

petitioner proceeded to 1248 Spruce street, Detroit, and never reported back to the parole officer."

Plaintiff alleges that he lived with his brother on Spruce street from the time of his release on parole until May, 1951, and that between May, 1951, and the spring of 1952 he left the State and resided in Tennessee and Ohio, returning to Detroit in the spring of 1952. He contends that his presence at his brother's home was well known to the parole officers, but offers no supporting proof in this regard other than a letter from the secretary of the Temple Baptist church, at Detroit, certifying that petitioner joined said church in February, 1951, and that the church records showed his address to be 1248 Spruce street, Detroit, Michigan, and a Salvation Army bible course certificate issued in August, 1949, disclosing that plaintiff had completed the first course of 12 lessons and that the address listed on its records was 1248 Spruce street, Detroit.

Plaintiff also alleges that he was arrested for a traffic violation in August, 1953, and was brought to Canfield station, and that:

"The officer in charge called Central station and said we have Arthur L. Carpenter here, give me a run-down on him. About 4 minutes elapsed and the officer called back and said, we have nothing on Arthur L. Carpenter neither way. Petitioner was issued a reckless driving ticket and released; that is a matter of record.

"It is a matter of common knowledge and just about everyone knows, if you are arrested in the city of Detroit it is strictly routine procedure to check your record to see if you are *wanted*. It is (an) outstanding fact and cannot be claimed that the parole officials at that time—4 years after release on parole—had never declared the parolee delinquent nor put a warrant in active service, nor ordered the Detroit police to hold him as a violator. If they

had of done so, the Detroit police would not have released their prisoner."

It is worthy of noting that the return discloses plaintiff's true name to be "Arthur L. Carpenter," but he was arrested, convicted and paroled under the name of "Harvey Carpenter."

There is nothing in the record before us to controvert the allegation in the department's answer and return that from the issuance of the parole violation warrant on July 29, 1949, to the 9th day of October, 1955, the corrections department and its officers had no knowledge or information concerning the whereabouts of plaintiff.

In a habeas corpus proceeding against the warden of the State prison of southern Michigan involving a parole violation, this Court in *In re Ginivalli,* 336 Mich 101, 104, 105, stated:

"In the instant case, although plaintiff speculates that Michigan authorities must have had notice of his several imprisonments from time to time in Illinois and could have filed detainers against him on those occasions and taken him into custody upon his release from prison there, and contends that certain exhibits in the case substantiate his claim in that regard, nevertheless the record before us discloses nothing to controvert the allegation in defendant's answer and return that after plaintiff's parole violation in April of 1932 'nothing was heard of petitioner, from him, or others, until June 5, 1947.' His arrest by Michigan authorities followed at the first opportunity thereafter when he became available to them upon release from prison in Illinois. As distinguished from *United States, ex rel. Howard,* v. *Ragen,* 59 F Supp 374, there was no indefinite withholding of action by Michigan authorities nor was plaintiff's liberty made to depend upon their whim or caprice. The 18-year delay in plaintiff's arrest for parole violation was occasioned by his own actions alone, namely, failure to report and keep

Michigan authorities advised as to his whereabouts, as required by the terms of his parole, and his concealment thereof from them. Accordingly, the long period of inaction followed by plaintiff's eventual arrest and imprisonment did not constitute a denial of due process."

The decision in *In re Colin, supra,* would not apply to the present case. In the *Colin Case* the Michigan supervisor of paroles was notified in January, 1936, by the warden of the United States penitentiary at Fort Leavenworth, Kansas, that Colin's term was about to expire and that the Michigan authorities would be notified 30 days in advance of his release so that Michigan officers could bring him back to Michigan as a parole violator. The Michigan authorities, because of lack of funds for traveling purposes, advised the warden that they would be unable to take Colin into custody on the date of his release. In May, 1951, the Michigan parole authorities learned that Colin was in custody in California, and Michigan officers were sent to California with extradition papers returning Colin to this State, and the Michigan parole board rescinded his parole and passed his case to expiration of the maximum sentence. This Court discharged the plaintiff, holding that parole officers may not withhold exercise of the right to reimprison a parole violator indefinitely and exercise such right at some remote time at the whim or caprice of the parole officers.

In the *Colin* decision this Court referred (p 494) to the *Ginivalli Case, supra,* as follows:

"Defendant's chief reliance is placed upon our holding in *In re Ginivalli,* 336 Mich 101, and the fact that plaintiff violated his duty, as in our opinion in that case declared, to keep Michigan authorities advised of his whereabouts. In that case we distinguished the *Ragen Case* [59 F Supp 374] on the ground that the Michigan authorities were not shown

to have had knowledge of Ginivalli's whereabouts or to have had it within their power to take him into custody prior to the time when they actually did so. In that respect the facts at bar resemble those in *Ragen* rather than in *Ginivalli*. While it was plaintiff's duty to keep Michigan authorities advised of where he was, his failure to do so did not, as in *Ginivalli*, keep Michigan authorities from knowing where he was on at least 3 occasions. They had it in their power to take plaintiff into custody, both in 1934 and in 1937, but declined to do so in the interests of economy."

We see no merit to plaintiff's claim that the parole board did not accord him a hearing on the parole violation charges. The department's return establishes that the plaintiff plead guilty to the 7 counts of the charge against him. Nor do we see merit to plaintiff's contention that the exhibit accompanying the return is not a true, full and complete copy, as it differs in no material way from the original which is in the official files deposited with the Court.

The writ of habeas corpus issued herein is dismissed.

DETHMERS, C. J., and SHARPE, SMITH, EDWARDS, VOELKER, CARR, and BLACK, JJ., concurred.