Robert E. GREENE, Jr., Petitioner-Appellee,

v.

MICHIGAN DEPARTMENT OF CORRECTIONS et al., Respondents-Appellants.

No. 15771.

United States Court of Appeals Sixth Circuit.

Dec. 12, 1964.

James R. Ramsey, Lansing, Mich., and Frank J. Kelley, Atty. Gen., Donald T. Kane, Asst. Atty. Gen., and Robert A. Derengoski, Sol. Gen., Lansing, Mich., on the brief, for appellants.

David N. Gorman (court appointed), Cincinnati, Ohio, for appellee.

Before CECIL and O'SULLIVAN, Circuit Judges, and BROOKS, District Judge.

PER CURIAM.

The question presented on this appeal is whether the Michigan Department of Corrections was without jurisdiction to arrest Robert E. Greene, Jr., petitioner-appellee, and revoke his parole in 1959 for a violation committed in 1950. This case was previously before this Court on appeal (315 F.2d 546) and was remanded to the District Court with instructions to conduct a hearing on the claim of the petitioner that the Michigan parole authorities had waived the right to revoke his parole because they did not proceed with reasonable diligence in issuing and executing a warrant for parole violation.

Greene was paroled from a federal penitentiary on March 15, 1947. During the period of this parole, he was convicted and sentenced on a state charge. This being in violation of his federal parole, the United States Marshal placed a detainer against him at the state prison. In March 1949, Greene was paroled from the state sentence and delivered to the custody of the United States Marshal. Upon completion of the federal sentence, the state placed him on permanent parole on August 21, 1949, for a term of three years. Greene violated all of his parole conditions and on January 13, 1950, the Department of Corrections issued a parole violation warrant for his arrest. In 1959, the State Supervisor of Paroles, in Michigan, received information that Greene was being detained by California authorities. A duplicate parole violation warrant was issued and Greene was returned to Jackson Prison on August 7, 1959. Thereafter he began this habeas corpus proceeding in the District Court.

In his petition for habeas corpus, Greene alleged that in 1954 he had been convicted of a felony in Alaska and imprisoned in the Federal Penitentiary at McNeil Island. His allegations implied that Michigan authorities learned of his confinement there but took no action because, as petitioner understood, "the State of Michigan did not want him at that time, and so long as he would stay out of the State of Michigan." He further averred that the State of Michigan did not place a detainer against him while he was at the McNeil Island prison, and that he was discharged from there on July 4, 1956. His third "federal question" was whether his reimprisonment violated due process "in view of the 'known fact'" that he had been employed and later imprisoned by the Federal Government. If such facts were established, they would indicate a deliberate failure of the Michigan authorities to take him into custody as a parole violator. It can be argued that under Michigan law such conduct would result in a waiver by parole authorities of the right to later imprison Greene as a parole violator. In In re Ginivalli, 336 Mich. 101, 104, 57 N.W.2d 457 (1953), the Supreme Court of Michigan quoted the following syllabus from United States ex rel. Howard v. Ragen, 59 F.Supp. 374 (N.D.Ill.1945):

> "The parole officers of state of Illinois in exercising right to reimprison parolee who has violated terms of his parole may not withhold such action indefinitely and exercise it at some remote time, since exercise of such power at whim or caprice of parole officers would deprive parolee of 'due process of law.'"

And in *In re Colin*, 337 Mich. 491, 60 N.W.2d 431 (1953), the Michigan court held that where parole authorities on occasions in 1934 and 1937 deliberately declined to take a parole violator into custody, fourteen years later in 1951 they could not elect to imprison him upon their third-time knowledge of his whereabouts and imprisonment in another state.

Mindful of such Michigan law and of Greene's habeas corpus allegation that Michigan authorities knew of his whereabouts as early as 1953 but declined to exercise their warrant for his arrest as a violator, we ruled it was error to dismiss Greene's petition without hearing, and remanded the cause to the District Court to conduct such a hearing, *Greene v. Michigan Dept. of Corrections*, 315 F.2d 546 (CA6, 1963). We there ruled that "[t]he court should determine from all the evidence whether the parole authorities acted with reasonable dispatch," 315 F.2d 548.

At the full hearing on remand, at which Greene was represented by counsel, he failed to prove that Michigan in 1953 knew of his whereabouts and deliberately declined to return him to prison. The evidence did show that on or about January 6, 1951, the Michigan State Police received from the State Police of Oregon a form notice that on November 8, 1950, Greene had been arrested in Seattle, Washington, "for investigation" but had been released the next day, November 9, 1950. Whether through inadvertence or otherwise, the above information was not communicated to the Michigan Department of Corrections, the agency charged with control of parolees. We emphasize that the foregoing was information as to where Greene *had been* two months before and was not information as to his then whereabouts. On the hearing, Greene testified that after he had absconded from Michigan in 1949, he traveled to the States of Alabama, Florida, Louisiana, Mississippi, Texas, Arizona, New Mexico, California, Oregon, Washington, and Alaska. He also testified to numerous criminal activities engaged in

at various places along the route of his travels and the sentences received therefor. The evidence was undisputed that not until early 1959 when Greene was imprisoned in California, did the Michigan Department of Corrections or any other Michigan agency have actual knowledge of his whereabouts. Greene's description of his plight in San Francisco in late 1958 was that "I don't quite know what I was charged with, to be sure, because I had so many charges on me at the time. The last time I believe it was nine charges." On January 14, 1959, Greene was sentenced to six months in a California county jail for possession of narcotics. It was knowledge of this imprisonment that activated Michigan, which secured his return and the imprisonment from which he seeks release by the instant habeas corpus proceeding.

■ The evidence showed that Michigan authorities do not make the same effort to find parole violators as they do to apprehend prison escapees and those who have taken flight after committing crimes in Michigan. Michigan prison and parole officers testified to the impracticability of sending so-called "Flyers" to every state in the Union where a parole violator might seek concealment; that they do not pursue them without some knowledge of where they might find them. We will not hold that such practice confers on Michigan parole violators a constitutional immunity against being taken into custody merely because there was delay in locating them.

The District Judge granted Greene's petition for habeas corpus upon his *finding of fact* that the notice received by the Michigan State Police that Greene had, some months before, been arrested and released "constituted notice to the Michigan Department of Corrections of petitioner's whereabouts," and from this finding concluded that because there was evidence that Greene remained in and around Seattle for some months after his arrest and release (although this was not known to Michigan) the failure of Michigan to then take steps to find him gave

Greene a federally granted immunity from later arrest and confinement. We cannot agree.

■ If we may indulge the doubtful assumption that Greene was denied due process of law if his detention is void under Michigan law, see United States ex rel. Meiner v. Ragen, 199 F.2d 798, 799 (CA7, 1952), but see, e. g., Beck v. Washington, 369 U.S. 541, 554–555, 82 S.Ct. 955, 8 L.Ed.2d 98 (1962); Snowden v. Hughes, 321 U.S. 1, 7, 11, 64 S.Ct. 397, 88 L.Ed. 497, 504 (1944); United States ex rel. Sieg v. Ragen, 247 F.2d 638, 639–640 (CA7, 1957), cert. denied, 355 U.S. 900, 78 S.Ct. 276, 2 L.Ed.2d 197 (1957), we do not consider that such law calls for Greene's release. In In re Ginivalli, 336 Mich. 101, 57 N.W.2d 457 (1953), and In re Carpenter, 348 Mich. 408, 83 N.W.2d 326 (1957), cert. denied, 355 U.S. 850, 78 S.Ct. 77, 2 L.Ed.2d 59 (1957), the Michigan Supreme Court announced Michigan's rule that long delay between a parole violation and the execution of a warrant therefor does not deprive an offender of due process of law in the absence of intervening knowledge of the parolee's whereabouts and opportunity to take him into custody. We are not persuaded that the failure of the Michigan State Police to transmit to the Department of Corrections the information that Greene *had been* in Seattle, or the failure of Michigan to act on that information, if we may assume that the Corrections Department was charged with that information, taints Michigan's later arrest of Greene with constitutional invalidity. Short of constitutional vice in Michigan's conduct, we are not at liberty to intrude our writ to supervise its parole practices.

Upon the hearing held pursuant to our remand, the petitioner did not make out the case which his petition alleged.

The judgment of the District Court is reversed, with direction to dismiss the petition.