ISAAC PARHAM *v.* WARDEN, BRIDGEPORT COMMUNITY CORRECTIONAL CENTER

HOUSE, C. J., LOISELLE, BOGDANSKI, LONGO and BARBER, Js.

Argued October 19—decision released December 21, 1976

*Cornelius F. Tuohy,* assistant attorney general, with whom, on the brief, was *Carl R. Ajello,* attorney general, for the appellant (defendant).

*Sue L. Wise,* with whom was *Margaret P. Levy,* for the appellee (plaintiff).

*Kimball Haines Hunt* and *Frank Cochran* filed a brief as amici curiae.

BARBER, J. The plaintiff filed a petition for a writ of habeas corpus claiming illegal confinement on the ground that he had been denied due process when returned to confinement for violation of parole. The trial court granted the petition and ordered the plaintiff discharged from custody as a parole violator. Upon the granting of certification the defendant appealed, assigning error in the court's finding of facts, in the conclusions reached and in the overruling of the defendant's claims of law.

The finding, which is not subject to any material corrections,[1] supports the following facts: On September 24, 1970, the plaintiff was sentenced to a term of imprisonment of not less than two or more

---

[1] Some of the general facts in the court's finding appear to be overly broad, but they are elsewhere modified by more specific findings and therefore it cannot be said that the broader findings of fact are in language of doubtful meaning so that their real significance does not clearly appear. It does not appear that the facts which the defendant seeks to have added to the finding are either admitted or undisputed. Practice Book § 628.

than five years for violation of the state dependency producing drug law. He was released on parole on September 17, 1971, subject to a parole agreement he had signed. The parole agreement contained the following special condition: "You are paroled only to an in-patient narcotic treatment program at . . . [Daytop], Inc., Seymour, Connecticut. You must comply with the recommendations of the treatment staff as to your course of treatment, and you must secure the express permission of both the treatment staff and your parole officer before making any changes in this program. If for any reason this program is not developed, your case is to be reported back to the Board [of Parole] for further consideration. Failure to comply with these conditions will result in your return to the custody of the Commissioner of Correction and your case will be reported back to the Board for further consideration." The agreement does not state that any course of action other than return to custody will occur if a parolee violates the conditions of his parole. It directed the plaintiff to consult with his parole officer whenever he had problems or he did not understand what was expected of him. The plaintiff acknowledged that he had read, or had had read to him, the conditions of his parole, and that he fully understood them and agreed to abide by and strictly follow them, and he fully understood the penalties involved should he in any manner violate any of the conditions. Under the terms of his parole agreement, it was the plaintiff's responsibility to keep his parole officer informed at all times concerning his place of residence and place of employment, to secure the permission of the parole officer before changing his residence or employment, and to report any change of residence or employment to

his parole officer within twenty-four hours of such change. During his trip to Daytop, the plaintiff's parole officer explained to him that he would have to stay at Daytop and that failure to do so would be a violation of his parole. On November 28, 1971, the plaintiff left Daytop without permission of the staff at Daytop or his parole officer. On the same day, when the plaintiff telephoned his parole officer in an effort to explain to him why he had left Daytop, his parole officer told the plaintiff that he would be taken back to prison. He was directed to return to Daytop, but he failed to do so. On December 21, 1971, a parole violation warrant was issued and mailed to the parole officer. On April 7, 1972, the Bridgeport parole office informed the plaintiff's parole officer that it had lodged the warrant with the Stamford police department. On October 14, 1974, the plaintiff was arrested by the police in Stamford on an unrelated charge and was informed that they were holding him on the parole violation warrant. In further violation of the agreed upon conditions of his parole, the plaintiff never informed his parole officer nor the parole authorities of his place of residence or employment subsequent to his leaving Daytop on November 28, 1971, and prior to his arrest on October 14, 1974. During this period, the only occasion on which the plaintiff contacted his parole officer or the parole authorities was several hours after he left Daytop, when he telephoned his parole officer and advised him that he was in Stamford. His last known address was Daytop, from which he had absconded on November 28, 1971. At the time of the plaintiff's release on parole the maximum term of the plaintiff's sentence was scheduled to expire on May 1, 1974. After May 1, 1974, the plaintiff believed that he was no longer

subject to parole. He did not understand that a reimprisonment warrant could be issued without his knowledge which would stop his sentence from running. It is not the policy of the division of parole to notify parolees of the existence of a warrant. The court found that during the period from December, 1971, until October, 1974, the plaintiff lived in Norwalk and Stamford, using his own name, and maintaining contact with his family and friends. He failed, however, to return to Daytop as directed by his parole officer. The question of the plaintiff's parole status has been referred to the board of parole for the purpose of determining whether to revoke or otherwise modify his parole.

The trial court concluded that the parole officer and other law enforcement agencies failed to take reasonable steps to execute the warrant for violation of parole or give the parolee notice of its issuance and that the plaintiff could have been apprehended by the parole or other law enforcement officer, acting with reasonable diligence. The finding contains no conclusion relating to due process or other constitutional limitation. We therefore refer to the memorandum of decision in order to learn the basis for the court's decision. *Waterbury* v. *Commission on Human Rights & Opportunities,* 160 Conn. 226, 228, 278 A.2d 771. The memorandum of decision recites that "[t]his unreasonable delay in giving notice and in executing the warrant, in the light of the deadtime penalty, violates the fundamental fairness required by the procedural due process clause of the Constitution of the United States."[2]

---

[2] "[General Statutes] Sec. 54-128. VIOLATION OF PAROLE. (a) Any paroled convict or inmate who has been returned to the custody of the commissioner of correction or any institution of the department of correction for violation of his parole may be retained in the institution from which he was paroled for a period equal to the

When the conclusions of a trial court are attacked on appeal, they are reviewed to determine whether they are legally and logically supported by the facts in the finding or involve the application of some erroneous rule of law material to the case. *Hutensky* v. *Avon,* 163 Conn. 433, 437, 311 A.2d 92; *Schnier* v. *Ives,* 162 Conn. 171, 177, 293 A.2d 1.

"The essence of parole is release from prison, before completion of sentence, on the condition that the prisoner abide by certain rules during the balance of the sentence." *Morrissey* v. *Brewer,* 408 U.S. 471, 477, 92 S. Ct. 2593, 33 L. Ed. 2d 484; see *Taylor* v. *Robinson,* 171 Conn. 691, 697 n.2, 372 A.2d 102. By statute, any inmate confined in the correctional institution at Somers, after serving not less than the minimum term of his sentence, may, in the discretion of the parole board, be paroled if it appears reasonably probable that the inmate will live and remain at liberty without violating the law and such release is not incompatible with the welfare of society. General Statutes § 54-125. The statutes also provide that each order of parole shall fix the limits of the parolee's residence, and in any particular case, the board of parole may establish special provisions for the parole of a convict. General Statutes §§ 54-125, 54-126. The statutes further provide that any returned parolee who has violated his parole may be retained in the institution from which he was paroled *"for a period equal to the unexpired portion of the term of his sentence at the date of the request or order for his return."* (Emphasis supplied.) General Statutes § 52-128.

---

unexpired portion of the term of his sentence at the date of the request or order for his return less any commutation or diminution of his sentence earned except that the board of parole may, in its discretion, determine that he shall forfeit any or all of such earned time, or may be again paroled by said board."

Revocation of parole is not part of a criminal prosecution and does not require the full panoply of rights due a defendant in a criminal proceeding. *Morrissey* v. *Brewer,* supra, 480. After the issuance of an arrest warrant, "[t]he first stage [of parole revocation] occurs when the parolee is arrested and detained, usually at the direction of his parole officer. The second occurs when parole is formally revoked. There is typically a substantial time lag between the arrest and the eventual determination by the parole board whether parole should be revoked." *Morrissey* v. *Brewer,* supra, 485. In considering whether the plaintiff in this case has been accorded due process, it is significant that the question of the plaintiff's parole status has been referred to the parole board for the purpose of determining whether to revoke or otherwise modify his parole and that the hearing has been continued at the plaintiff's request. See *Gagnon* v. *Scarpelli,* 411 U.S. 778, 791, 93 S. Ct. 1756, 36 L. Ed. 2d 656, holding that where a previously convicted probationer was not afforded either a preliminary revocation hearing or a final hearing, revocation of his probation did not meet the standards of due process prescribed in *Morrissey* v. *Brewer,* supra; see also *State* v. *White,* 169 Conn. 223, 239, 363 A.2d 143.

After an examination of all the subordinate facts in the finding, we are of the opinion that they do not logically support the ultimate conclusions of the trial court and they do not establish that the plaintiff was denied due process. The plaintiff disregarded the principal rules of his parole agreement, thereby defeating the essence of parole. See *Morrissey* v. *Brewer,* supra. One of the basic conditions of the parole agreement was that the plaintiff was to remain in the in-patient narcotics treat-

ment program at Daytop, which he failed to do by leaving without permission. Furthermore, at no time after leaving Daytop did the plaintiff inform his parole officer of his changes of residence, yet this is an essential requirement for successful parole supervision. See *Gentry* v. *Warden,* 167 Conn. 639, 643, 356 A.2d 902. Under the terms of the parole agreement, it was the plaintiff's responsibility to keep his parole officer informed at all times concerning his place of residence, not the parole officer's duty to find him. See *Gentry* v. *Warden,* supra. A person who eludes arrest over an extended period of time lays no proper foundation for a claim that such delay caused him a denial of due process. *State* v. *Lockman,* 169 Conn. 116, 120, 362 A.2d 920. The plaintiff acknowledged, in the agreement, that he understood that his failure to comply with the conditions in any manner would be a violation of parole and would result in his return to custody.

The implications of violation of parole are clearly defined in § 54-128 of the General Statutes. As provided in this statute, they include the possibility that the parole violator, upon return to custody, may be subject to the requirement that he serve a period equal to the "unexpired" portion of the term of his sentence at the date of the request or order for his return. The issuance of the arrest warrant stopped the running of the plaintiff's sentence, and the ensuing period until his return to custody became "dead time." Ibid. The plaintiff does not challenge the validity or constitutionality of § 54-128. The plaintiff is presumed to have known the provisions of this law. Such a fundamental rule is based on public policy and the principle that the acts of a person must be considered as having been

done with knowledge of the law, for otherwise the law could be easily evaded. *Hebb* v. *Zoning Board of Appeals,* 150 Conn. 539, 542, 192 A.2d 206; *Atlas Realty Corporation* v. *House,* 123 Conn. 94, 101, 192 A. 564. By flagrantly violating the conditions of his parole and not returning to Daytop after being ordered to do so by his parole officer, the plaintiff assumed the calculated risk that the provisions of § 54-128 would be invoked against him. As a general policy, the division of parole does not inform parolees of an outstanding parole violation warrant before it is executed. This is grounded upon a reasonable belief that to do so would aggravate the situation, particularly by causing problems of parolees violating other conditions of their parole and absconding before arrest. The subordinate facts do not support the conclusion of the trial court that the parole officer and law enforcement agencies did not act with reasonable diligence under the circumstances. The finding is devoid of any facts indicating what action was taken by the police to execute the arrest warrant. It is presumed that the officers properly performed their duty until the contrary appears. *Balch Pontiac-Buick, Inc.* v. *Commissioner of Motor Vehicles,* 165 Conn. 559, 568, 345 A.2d 520; *Aczas* v. *Stuart Heights, Inc.,* 154 Conn. 54, 59, 221 A.2d 589.

When one is charged with a crime, we have held that a delay in making an arrest does not of itself result in a denial of due process of law. To establish that a delay has produced a denial of due process, the person arrested must show that actual significant prejudice to him has resulted. *State* v. *Echols,* 170 Conn. 11, 17, 364 A.2d 225; *State* v. *Lockman,* supra; *State* v. *L'Heureux,* 166 Conn. 312, 321–22, 348 A.2d 578; see *United States* v. *Marion,* 404 U.S.

307, 324, 92 S. Ct. 455, 30 L. Ed. 2d 468. "[T]he issuance of a violator warrant triggers a process which, as a matter of fundamental fairness, must be pursued with reasonable diligence and with reasonable dispatch. What will constitute a reasonable time will, of necessity, vary with the facts of each case. Obviously, a violator who has succeeded in evading the authorities is in no position to complain of a delay. Even in other cases delay will not in and of itself suffice to show prejudice, except in an extreme case, and actual prejudice vel non is the focal point of the inquiry." *Shelton* v. *United States Board of Parole,* 388 F.2d 567, 574 (D.C. Cir.) ; see also *Robb* v. *Norton,* 394 F. Sup. 856, 858 (D. Conn.). In this case there is no finding of specific prejudice. The trial court's conclusion that there was a denial of due process is not supported by the applicable law and the subordinate facts in the finding.

There is error, the judgment is set aside and the case is remanded with direction to render judgment remanding the petitioner to the custody of the defendant warden.

In this opinion HOUSE, C. J., LOISELLE and LONGO, Js., concurred.

BOGDANSKI, J. (dissenting). On the facts of this case and the law applicable thereto, the trial court properly ordered the discharge of the plaintiff.

The sentence of a parolee continues to run until such time as a request for his return to custody is issued by an appropriate authority. Upon return to custody for a violation of parole, an inmate may be retained in custody for a period equal to the unexpired portion of the term of his sentence as measured from the date of the request for rearrest.

General Statutes § 54-128. Thus, the ex parte issuance of a request for rearrest suspends the running of the parolee's sentence until he is actually returned to custody. That period of time is commonly referred to as "dead time" since it deprives the parolee of his entitlement to any credit for that period of time against the running of his sentence.

In this case, the parole violation warrant was issued on December 21, 1971. It was not, however, until October 25, 1974, that the warrant was served upon the plaintiff. The plaintiff claims that the failure of the state to execute the warrant within a reasonable time after its issuance violated his constitutional rights guaranteed by the fourteenth amendment to the constitution of the United States.

The Supreme Court of the United States has ruled that the liberty of a parolee "is valuable and must be seen as within the protection of the Fourteenth Amendment. Its termination calls for some orderly process, however informal." *Morrissey* v. *Brewer,* 408 U.S. 471, 482, 92 S. Ct. 2593, 33 L. Ed. 2d 484. The underlying rationale of that decision was that fundamental fairness is required before the liberty of a parolee may be taken away. Id., pp. 483-84. In *Moody* v. *Daggett,* 429 U.S. 78, 86, 97 S. Ct. 274, 50 L. Ed. 2d 236, the United States Supreme Court affirmed the *Morrissey* decision as holding "that the conditional freedom of a parolee generated by statute is a liberty interest protected by the Due Process Clause of the Fourteenth Amendment which may not be terminated absent appropriate due process safeguards."

That fundamental fairness doctrine requires that the warrant for a parolee's arrest be executed within a reasonable time after its issuance. Some

courts have reached that conclusion on the theory that failure to do so was a violation of procedural due process. *McCowan* v. *Nelson,* 436 F.2d 758, 760 (9th Cir.); *Boswell* v. *United States Board of Parole,* 388 F.2d 567, 571, 573–74 (D.C. Cir.); *United States ex rel. Howard* v. *Ragen,* 59 F. Sup. 374, 378 (N.D. Ill.); *In re Colin,* 337 Mich. 491, 494, 60 N.W.2d 431. Other courts have ruled that there was a waiver by the state. *Greene* v. *Michigan Department of Corrections,* 315 F.2d 546, 547–48 (6th Cir.); *Ex parte Bice,* 42 Ala. App. 547, 171 So. 2d 261; *People* v. *Valle,* 7 Misc. 2d 125, 164 N.Y.S.2d 67. And still other courts have reasoned that a warrant not executed within a reasonable time was stale and therefore ineffective. *United States ex rel. Vance* v. *Kenton,* 252 F. Sup. 344, 345 (D. Conn.); *United States* v. *Gernie,* 228 F. Sup. 329, 337–39 (S.D. N.Y.).

The warrant for the arrest must be executed within a reasonable time. "We think the issuance of a violator warrant triggers a process which, as a matter of fundamental fairness, must be pursued with reasonable diligence and with reasonable dispatch." *Boswell* v. *United States Board of Parole,* supra, 574.

To determine whether execution of the warrant was accomplished within a reasonable time, each case must be decided on its own merits. The relevant considerations are: (1) the time lapse between the issuance of the warrant and its execution; (2) the efforts of the state to serve the warrant; and (3) the conduct of the plaintiff in frustrating service of the warrant. *United States ex rel. Vance* v. *Kenton,* supra; *United States* v. *Gernie,* supra, 338.

The trial court made the following findings of fact: Immediately after leaving Daytop the plaintiff called his parole officer to tell him that he had left Daytop, why he had left, and where he was then located in the city of Stamford. During the period from December, 1971, until October, 1974, the plaintiff lived and worked openly in Fairfield County. He signed documents, entered into contracts and was listed in the Norwalk telephone directory, all under the name of Isaac Parham. At no time did he hide or leave the state.

The relevant findings of fact concerning the state's effort to execute the warrant are: A parole violation warrant was issued on December 21, 1971. Because the plaintiff indicated he was staying in the Stamford area, the parole officer mailed the warrant to the Bridgeport police with instructions to alert the Stamford police department. During the entire period from December, 1971, to October, 1974, the division of parole, in accordance with its well-established policy in such cases, made no attempt to notify the plaintiff that a parole violation warrant had been issued for his arrest.

From these and other facts found the trial court concluded (1) that the plaintiff did nothing to frustrate the service of the warrant on him or the giving to him of timely notice; (2) that the parole and law enforcement agencies failed to take reasonable steps to execute the warrant or give the plaintiff notice of it; and (3) that the plaintiff's maximum sentence would have expired on May 1, 1974, if he had not been admitted to parole.

On those facts, the trial court concluded that the delay in the execution of the warrant was unreasonable. That delay, in light of the dead-time penalty, made the warrant stale and ineffective.

"If the law were otherwise the results would be offensive to every concept of justice and fair play. A warrant issued ex parte could be held . . . indefinitely and could be executed many years later at the whim . . . of the probation authorities. This could occur even were the probationer's address and whereabouts fully known . . . or indeed a matter of record. . . . Upon his arrest after a lapse of many years proof of innocence of the charge of violation might well be unavailable to him." *United States* v. *Gernie,* supra, 338. Administrative workloads and administrative efficiency cannot justify abridgement of basic constitutional rights. *United States* v. *Fay,* 247 F.2d 662, 669 (2d Cir.); and *Liistro* v. *Robinson,* 170 Conn. 116, 135, 365 A.2d 109 (*Bogdanski, J.,* dissenting opinion).

As this case involves the intrusion into the constitutional rights of the accused, the plaintiff "is not required to show that the constitutional error was harmful; rather, the state must show that it was harmless beyond a reasonable doubt. *Chapman* v. *California,* 386 U.S. 18, 24, 87 S. Ct. 824, 17 L. Ed. 2d 705"; *Aillon* v. *State,* 168 Conn. 541, 548, 363 A.2d 49. There was no evidence presented by the state that the deprivation of the plaintiff's constitutional rights was harmless.

I would, therefore, find no error in the trial court's rulings.