884 F.2d 579
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
William DOMINQUE, Plaintiff-Appellant,
v.
James A. TELB, Sheriff, et al., Defendant,
J.G. Putnam, Assistant Deputy Director, Defendant-Appellee.
 No. 88-4000.
 United States Court of Appeals, Sixth Circuit.
 Aug. 29, 1989.
 
 Before KENNEDY and KRUPANSKY, Circuit Judges, and WENDELL A. MILES, Senior District Judge.[1]
 PER CURIAM:
 
 
 1
 Plaintiff-appellant, William Dominque, appeals the District Court's grant of summary judgment to defendant-appellee, J.G. Putnam, on the basis of qualified immunity in this 42 U.S.C. Sec. 1983 action. This case was previously before this Court on appeal, 831 F.2d 673 (6th Cir.1987) (hereinafter Dominque I ), and was remanded for a legal determination of whether plaintiff had shown "not only violations of his constitutional rights, but also that these rights were so clearly established when the acts were committed that any officer in the defendant's position, measured objectively, would have clearly understood that he was under an affirmative duty to have refrained from such conduct. Anderson v. Creighton, 107 S.Ct. at 3039." Dominque I, 831 F.2d at 676. See also Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Kennedy v. City of Cleveland, 797 F.2d 297, 299 (6th Cir.1986), cert. denied, 479 U.S. 1103 (1987). We agree with the District Court that defendant did not violate clearly established law; accordingly, we affirm.
 
 I.
 
 2
 The background on this case was summarized by this Court on the first appeal as follows:
 
 
 3
 Defendant Jimmy G. Putnam is the Assistant Deputy Director of the Michigan Department of Corrections.... [Plaintiff's] section 1983 claim alleges that Putnam, by filing an unlawful detainer, deprived Dominque of his liberty without due process of law in violation of the Fifth and Fourteenth Amendments. The district court [in Dominque I ] dismissed Dominque's complaint under section 1985 and his claims against the other defendants, but denied Putnam's combined motion for dismissal and for summary judgment as to the section 1983 claim on the ground that there were material issues of fact concerning Putnam's defense of qualified immunity....
 
 
 4
 In 1970, plaintiff Dominque was sentenced by the Michigan courts to serve a 15-year sentence for robbery. In 1976, Dominque escaped from confinement in Michigan and committed an armed robbery in Ohio. Thereafter apprehended in Michigan, he was held in the Monroe County Jail on Michigan charges of carrying a concealed weapon and possessing stolen property. Dominque waived extradition to Ohio to face the robbery charges in exchange for the dismissal of the described Michigan criminal charges. On that day, however, the Michigan Department of Corrections filed a detainer with Monroe County authorities. Extradited to Ohio, he was convicted and sentenced in Ohio, but was released in 1979 by authorities there. No detainers had been filed with them against such a release. In 1981, Dominque was arrested and convicted for a minor theft offense, but was released in 1982 when there were again no detainers prohibiting such release.
 
 
 5
 On December 4, 1984, Dominque was stopped for a traffic offense in Ohio. Although plaintiff's outstanding Ohio traffic violation charge was disposed of, plaintiff was detained without bond because defendants had forwarded to the Lucas County Sheriff's Department a detainer and an administrative warrant for the return of plaintiff as an escaped inmate based upon his alleged unauthorized leave taken in January, 1976. According to plaintiff, he had, through counsel, informed Putnam that under established law, the Michigan Department of Corrections had waived jurisdiction over him by waiting an unreasonable time to file the detainer. He also asserted that Putnam had wrongfully denied the waiver and had wrongfully disputed the alleged action of an unknown employee/agent of the Department of Corrections who had not earlier placed a detainer for the plaintiff's return from the State of Ohio, even though he had known of plaintiff's actual incarceration and whereabouts. Plaintiff's petition for habeas corpus filed in the Ohio courts, challenging the Michigan detainer and plaintiff's return on the Michigan administrative warrant, was denied. Plaintiff was thereupon returned to Michigan after Ohio Governor Celeste issued a warrant of arrest and extradition.
 
 
 6
 Dominque I, 831 F.2d at 674.
 
 
 7
 In denying defendant's qualified immunity defense in Dominque I, the District Court erroneously characterized the issue of whether clearly established law had been violated as a "material dispute of fact," and "thrust[ ] upon the defendant the court's own duty to resolve the issue." Id. at 677. We remanded to the District Court to determine, as a matter of law, "whether the defendant should have known that his alleged acts violated clearly established rights at the time." Id. On remand, the trial court determined that defendant had not violated clearly established law.
 
 II.
 
 8
 Having reviewed this question of law, we agree with the District Court's conclusion that, "a reasonable official in the defendant's position could have believed his conduct to be lawful considering the uncertain status of Michigan law re parolee and escapee. No violation of plaintiff's constitutional rights occurred." JA 67. First, neither the parties, the District Court, nor this Court have found any Michigan law on escapees to which a reasonable official in Putnam's shoes could have looked. Second, clearly established law was not violated under the facts of this case regardless of whether plaintiff's status was that of a parolee versus that of an escapee, notwithstanding plaintiff's assertions to the contrary.
 
 
 9
 The sparse Michigan cases arguably on point concern parolees. See In re Colin, 337 Mich. 491 (1953); In re Cammarata's Petition, 341 Mich. 528 (1954), cert. denied, 349 U.S. 953 (1955). In Colin, the Michigan Department of Corrections issued a warrant for Colin's parole violation in 1927. In both 1934 and 1937, Michigan officials were advised that Colin would soon be released from non-Michigan prisons, but they declined to take him into custody because they lacked travel funds. In 1950, Michigan parole authorities issued a second warrant, and in 1951 returned Colin to Michigan where he was to serve the remainder of his maximum five-year sentence.
 
 
 10
 The Michigan Supreme Court discharged Colin. Taking into account the "dead time" he served from 1927-34 in a California prison, the "live time" on which his sentence ran from 1934-1951 far exceeded his maximum sentence.[2] 337 Mich. at 495. The underlying rationale of this holding was quoted by the Colin court from United States, ex rel. Howard v. Ragen, 59 F.Supp. 374 (N.D.Ill.1945) (headnote p 3):
 
 
 11
 The parole officers of State of Illinois in exercising right to reimprison parolee who has violated terms of his parole may not withhold such action indefinitely and exercise it at some remote time, since exercise of such power at whim or caprice of parole officers would deprive parolee of "due process of law."
 
 
 12
 337 Mich. at 492-93.
 
 
 13
 In the present case, Dominque had served only six years of his fifteen year maximum sentence before escaping in 1976. Taking into account three years of "dead time" for his incarceration in Ohio from 1976-79, and ignoring his subsequent Ohio incarceration in 1981-82, Dominque still had four years of "live time" left on his maximum sentence when defendant filed the detainer with Ohio authorities in 1984 (the maximum sentence would run to 1988). Thus, even if it were clearly established that the parolee cases were applicable, a question which we explicitly decline to resolve in this case as unnecessary, plaintiff would still have had no right to repose. In any event, the law was not so clearly established at the time that a reasonable official in Putnam's shoes would have known that his acts violated clearly established rights.
 
 
 14
 Accordingly, the District Court's grant of summary judgment is AFFIRMED.
 
 
 
 [1]
 The Honorable Wendell A. Miles, Senior District Judge for the Western District of Michigan, sitting by designation
 
 
 [2]
 "Dead time" means the time during which the Michigan authorities could not have confined the prisoner at a Michigan prison to serve his sentence. Conversely, "live time" means the time during which Michigan authorities could have incarcerated the prisoner in Michigan to serve his original sentence. See In re Holton, 304 Mich. 534, 540 (1943)