COMMONWEALTH vs. PHILIP A. SAWICKI.

Hampden.    November 3, 1975. — December 29, 1975.

Present: TAURO, C.J., QUIRICO, BRAUCHER, HENNESSEY, & KAPLAN, JJ.

*Practice, Criminal,* Probation.

A court has power within a reasonable time after the expiration of
the term of probation of a convicted defendant to enter an order,
based on his violations of conditions of his probation which
occurred during the term of probation, extending the term or
revoking probation. [380-383]

On report by a judge of the Superior Court of the question whether
it had jurisdiction after the expiration of the term of probation of
a convicted defendant to enter an order, based on his violations of
conditions of his probation which occurred during the term of
probation, to extend the term, the record did not indicate any
specific prejudice to the defendant resulting from an interval of
six months between the expiration of the original term and entry
of the order of extension; conduct of the defendant and confusion
in the probation department contributed to the dragging out of
the procedures. [380-387]

INDICTMENT found and returned in the Superior Court
on January 9, 1968.

A proceeding to terminate probation was heard by
*Moriarty,* J., and the case was reserved and reported by
him to the Appeals Court.   The Supreme Judicial Court,
on its own initiative, ordered direct review.

*Daniel E. O'Malley,* Assistant District Attorney, for the
Commonwealth.

*Leonard R. Skvirsky,* for the defendant.

KAPLAN, J.   The case is here on report and presents a
question about the power of a judge of the Superior
Court to extend or revoke probation by an order entered
after the original probationary term has expired.

On September 5, 1973, Philip A. Sawicki was convicted in the Superior Court, Hampden County, of assault and battery (G. L. c. 265, § 13A), and sentenced to a prison term of one year, sentence suspended, probation for one year. Conditions of probation were the usual (see present Rule 56 of the Superior Court [1974]).

In the proceedings to revoke probation (further described below) the judge found that Sawicki had committed three violations during the term.[1] First, in October, 1973, about a month after sentence, he attacked a police officer who had been summoned to investigate a barroom disturbance. For this offense he was convicted in Palmer District Court of assault and battery on a police officer (G. L. c. 265, § 13D); he took his appeal to the Superior Court but retrial had not yet taken place at the time of the court hearing on revocation of probation. Second, Sawicki made false statements in writing: completing a form on two visits to his probation officer after his October arrest, he answered "No" to the question whether he had been "arrested or involved in any difficulty since your last report." Because there is no system for automatic notification of the probation authorities when a probationer is charged with or convicted of crime, Sawicki's false reports served to keep his probation officer in ignorance of the October incident. Third, after July 17, 1974, Sawicki failed to report to a probation office. He had given notice in December, 1973, of a change of residence to New Hampshire and the probation authorities had arranged to transfer supervision to a probation office there. But when, in July, 1974, Sawicki moved back to Massachusetts, he ceased reporting to either office. This, too, failed to come to the attention of the Massachusetts authorities, possibly because the proba-

---

[1] No question is raised here about the facts or their sufficiency as violations, and we have no occasion to pass on these matters.

tion officer originally assigned had left in February for a temporary job in Washington.

The stated term of probation ended on September 4, 1974. In November Sawicki reported to the probation office and sought a termination of his probation; on November 15, 1974, a report with recommendation was presented by an assistant chief probation officer to a judge of the Superior Court. The report stated: "All indications are that this man was an unsuccessful probationer and should have been violated [*sic*]. However, due to the failure on our part to bring this case to the attention of the court prior to his expiration date, we are forced to ask that his probation be terminated." The judge, however, did not accept the position that termination of probation was obligatory, and ordered the necessary steps to be taken to determine whether Sawicki should be surrendered for violation of probation. Normal administrative procedures were followed, and revocation hearings before the judge commenced on January 17, 1975. On March 13, 1975, the judge, finding violations as indicated above, entered an order extending the period of probation for two years from September 4, 1974. As the question of the court's "jurisdiction" was a novel one, the judge reported the following question to the Appeals Court: "Did this court have jurisdiction, on March 13, 1975, . . . to extend the term of or to revoke the defendant's probation on the basis of violations of conditions of his probation which occurred during the term of probation, in view of the fact that the defendant's term of probation had expired on September 4, 1974 and in view of the fact that he had not been brought before the court by his probation officer until over four months after that date?" [Judge's footnote omitted.] Our court took the matter for direct review under G. L. c. 211A, § 10.

Although the Commonwealth in argument to the judge sided with Sawicki on the question of jurisdiction, it has since, "upon further research and reflection," come to agree with the judge, whose knowledgeable and thorough

opinion accompanying his report of the question has lightened our task. We, too, agree with the judge that the court was not disabled by the expiration of the term from acting on the basis of in-term violations.

The statutes, with reflection in the prevailing practice, indicate that termination of probation, or rather of the court's power over the probationer, is not automatic when the stated period of probation has run even when no steps leading to revocation of probation have been previously taken.[2] On the contrary, final action, in the form of an order signalling the end of the court's supervision of the probationer, is required to terminate probation, and this may occur after the close of the probation period originally set. It appears to follow that — within limits to be described — the order actually entered may take due account of infractions that occurred during the period of probation and for which the probationer has not previously been called to account.

In the following passage from G. L. c. 279, § 3, as appearing in St. 1972, c. 251, the "final disposition of the case" bespeaks an order of the court in the sense mentioned: "At any time before final disposition of the case of a person placed under probation supervision or in the custody or care of a probation officer, the probation officer may arrest him without a warrant and take him before the court, or the court may issue a warrant for his arrest. When taken before the court, it may, if he has not been sentenced, sentence him or make any other lawful disposition of the case, and if he has been sentenced, it may continue or revoke the suspension of the execution of his sentence. . . ." Similarly, under G. L. c. 279, § 1, as amended by St. 1938, c. 354, a situation is dealt with that envisages action by the court after the

---

[2] We note that the framework of the statutes concerning parole (G. L. c. 127, §§ 128-151) is different from that regarding probation. We intimate no opinion on the proper answer to a question like the present put in the context of parole rather than probation.

stated probation is over to determine whether the probationer has complied with the conditions of probation. ". . . When a person . . . is sentenced to pay a fine, and to stand committed until it is paid, the court may direct that the execution of the sentence be suspended for such time as it shall fix, and in its discretion that he be placed on probation on condition that he pay the fine within such time. . . . If during or at the end of said period the probation officer shall report that the fine is in whole or in part unpaid, and in his opinion the person is unwilling or unable to pay it, the court may either extend said period, place the case on file or revoke the suspension of the execution of the sentence. . . ." As the probation officer need not report until the end of the period set by the judge for payment of the fine (which is the stated period of probation), the statute is to be read as empowering the court to act after the probation period has ended.

We should make mention also of decisions of this court over the years, against a background of statutes substantially similar to those currently effective, which, without deciding our precise question, do look to an order of the court as the terminal point of the court's oversight of the probationer. See *Commonwealth* v. *Brandano*, 359 Mass. 332, 336 (1971) ("[a] defendant placed on probation is under the court's supervision pending further order or final judgment"); *King* v. *Commonwealth*, 246 Mass. 57, 60 (1923) ("if [the probationer] satisfies the court that he has responded to probation, and that there is no longer occasion to keep him under supervision, the judge may decide to then dismiss the case"). See also *Marks* v. *Wentworth*, 199 Mass. 44, 46 (1908); *Commonwealth* v. *McGovern*, 183 Mass. 238, 240 (1903).

Rule 57 of the Superior Court (1974) (with slight change continuing former Rule 99) is instructive as to the practice: "The term of probation, unless otherwise prescribed, shall be until the regular sitting for or including criminal business within the county appointed to begin

next after the expiration of the following periods after the day on which the defendant is placed on probation namely: — in cases under G. L. Chapter 273, five years and eleven months; and in other cases, eleven months. At the end of the term of probation, the probation officer shall make a written report to the court of the result of probation, which shall be filed in the case, and, if the court shall order, the probation officer shall bring the defendant before the court for an extention of probation or for other disposition."[3]   The first sentence of the rule, which applies when no fixed period of probation has been prescribed, is quite properly aimed at assuring that a criminal sitting will be in progress at the end of the term of probation and looks to a prompt court determination of a probationer's status.   We are informed that in fact judges pronouncing the original sentences usually set a fixed period of probation, and, although the reports are commonly submitted to the court during the sitting in which the termination date of probation falls, they are often not available to or seen by the judge until after that date.   A like situation may arise because of administrative lag in preparing reports or because, in any county in which criminal sessions are not continuous, reports may be filed when the court is not sitting.   Ordinarily the recommendation of the probation office is favorable, an order of discharge from probation is entered, and no difficulty arises.   When the recommendation is unfavorable, it has been the sound practice of probation officers to try to bring the case to court before the term expires. Thus the present case is exceptional, though cases similar in principle might well have arisen whenever an infraction occurred near the end of the term.   But if the view were accepted that the court loses power with the expira-

---

[3] Chapter 273 deals with desertion and nonsupport of a wife or minor child, the responsibility of a father for illegitimate issue (see *Commonwealth* v. *MacKenzie,* 368 Mass. 613 [1975]), and the obligations of children over twenty-one for destitute parents.

tion of the term of probation (or at that time unless some step to revoke or modify probation has been taken earlier), there would be little point in submitting reports or, indeed, in requiring judicial supervision of termination of probation in the generality of cases.

Our view that a court's power continues until a final order is entered is in accord with decisions in several other jurisdictions which (subject to the limit of a reasonable time) allow revocation or extension of probation for violations during the probationary term although official action is commenced after that term has ended. See *State* v. *White,* 193 Neb. 93 (1975); *Decker* v. *State,* 209 N.W. 2d 879 (N.D. 1973); *Commonwealth* v. *Clark,* 225 Pa. Super. 171, 173 (1973); *Commonwealth* v. *Ferguson,* 201 Pa. Super. 649, 654-655 (1963); *Commonwealth* v. *Duff,* 201 Pa. Super. 387, 393-396 (1963), rev'd on other grounds, 414 Pa. 471 (1964). See also *State* v. *Davis,* 56 Wash. 2d 729 (1960). A Federal court has power to issue a warrant after the close of the probationary period (but within a maximum period specified by statute) which is followed by proceedings that may lead to revocation of probation. See *United States* v. *Swanson,* 454 F.2d 1263, 1264-1265 (7th Cir. 1972) (revocation proper despite the prior issuance of an order discharging the defendant from probation); 18 U.S.C. §§ 3651, 3653 (1970).

As the judge below acknowledged, many jurisdictions hold to the rule that probation may be revoked or modified after the term of probation only if action to that end has been taken within the term, but the statutes involved appear to differ materially from our own. See, e.g., *Keller* v. *Superior Court In and For the County of Maricopa,* 22 Ariz. App. 122 (1974) (cf. Ariz. Rev. Stat. Ann. § 13-1657 [1956] ["The court may at any time during the period of probation revoke . . . ."]); *In re Griffin,* 67 Cal. 2d 343 (1967) (cf. Cal. Penal Code § 1203.3 [1971] ["The court shall have authority at any time during the term of probation to revoke, modify . . . ."]); *Smith* v.

*State,* 513 S.W. 2d 81 (Tex. Ct. Crim. App. 1974) (cf. Vernon's Ann. Code of Crim. Prac. art. 42. 12, § 8[a] [1966] ["at any time during the period of probation the court may issue a warrant . . . ."]). In some of these jurisdictions all that seems to be necessary to vest the courts with power to act after the probationary term is a mere beginning step taken during the term in reaction to a supposed violation. See, e.g., *Avance* v. *Mills,* 495 P. 2d 828 (Okla. Ct. Crim. App. 1972) (filing of application to revoke probation within period adequate to give court authority); *State* v. *Hutto,* 252 S.C. 36, 45-46 (1968) (arrest warrant must issue within probationary period); *Smith* v. *State, supra* (motion to revoke probation must be filed and capias must be issued but need not be served before probationary period expires). But see *Keller* v. *Superior Court In and For the County of Maricopa, supra* (revocation must be complete before end of probationary term). In practical effect, then, these jurisdictions may be not far apart from others whose rule is nominally contrary.[4]

Although we affirm the existence of a power in the court beyond the probationary period as outlined above, we of course confine the power to action in respect to violations committed during the period, and further, we require that the court decide the question of extension or

[4]ABA Standards Relating to Probation (Approved Draft, 1970) states in standard 4.1 at 15: "Satisfactory completion of probation term. It should be provided that probation automatically terminates upon the successful completion of the term set by the court at the time of sentencing. It is nevertheless desirable that the fact of termination be recorded in an order of the court, a copy of which should be furnished to the probationer." The conjunction of "automatically" with "successful" creates some difficulty of interpretation: termination would seem not automatic if there is to be inquiry whether completion of the term was successful. The commentary says (*id.* at 52) that the first sentence of the standard "sets forth what is universally the law in any event, *i.e.,* that the power of control over the offender ceases upon the expiration of the period of probation." As our text indicates, this statement requires considerable qualification to save it from error.

revocation of probation within a reasonable time. In this we accord with other jurisdictions generally of our mind. See *United States* v. *Gernie,* 228 F. Supp. 329, 337-339 (S.D.N.Y. 1964); *Decker* v. *State,* 209 N.W. 2d 879, 885 (N.D. 1973); *Commonwealth* v. *Clark,* 225 Pa. Super. 171, 173-175 (1973); cf. *Simon* v. *Moseley,* 452 F.2d 306, 309-310 (10th Cir. 1971) (reasonable time limitation for revocation of parole). If the status cannot be fixed by the end of the probationary period, as normally it should be, then there must be a concentrated effort to settle it with reasonable promptness thereafter. A protracted delay would not only make the eventual hearing less effective, but would also work against the goal of re-habilitation of the offender by adding to his anxiety and making him further distrustful of legal procedures. Cf. *Marks* v. *Wentworth,* 199 Mass. 44, 45 (1908); *United States* v. *Ewell,* 383 U.S. 116, 120 (1966). What is a reasonable time we leave to case-by-case appraisal,[5] noting that revocation of probation may present con-siderations somewhat different from those relevant to the ordinary run of "speedy trial" cases. See *Maldonado, petitioner,* 364 Mass. 359, 366 (1973).[6]

---

[5]It may be advisable, nevertheless, to deal with some, at least, of the procedures for revocation of probation by rules within the province of the studies of the Advisory Committee on Rules of Criminal Procedure of our Judicial Conference.

[6]Whether the constitutional requirement of "speedy trial" worked out in the usual context (see *Barker* v. *Wingo,* 407 U.S. 514 [1972]) applies to revocation of probation, we need not now decide as the facts of the present case would not in any event show a depri-vation of constitutional proportions. A few courts have referred to the constitutional principle in revocation proceedings that had been delayed while the probationer was incarcerated (as it happened, for crimes constituting the bases for the revocation proceedings). See *United States* v. *Louzon,* 392 F. Supp. 1220 (E.D. Mich. 1975); *Allen* v. *State,* 505 S.W. 2d 715 (Tenn. 1974); *Fariss* v. *Tipps,* 463 S.W. 2d 176 (Tex. 1971). See also *State* v. *Jones,* 285 So. 2d 231 (La. 1973) (reaching similar conclusion on basis of State law). But cf. *Small* v. *Britton,* 500 F.2d 299 (10th Cir. 1974) (upholding delayed proceedings in parole context); *Cook* v. *United States Attorney Gen.,* 488 F.2d 667 (5th Cir. 1974) (same).

Here Sawicki's probation was to end on September 4,
1974, yet the order extending probation was not entered
until March 13, 1975. The interval of six months calls
for explanation, especially when it is remembered that
Sawicki was seeking a resolution of his status in Novem-
ber. However, the probation department did not delay
in going to court after Sawicki appeared, and the effort
to assure a fair and careful hearing (see *Gagnon* v.
*Scarpelli,* 411 U.S. 778 [1973]), complicated as it was
by the question of the court's power, accounts for much
of the time after November. The chief probation officer
for Hampden County held a probable cause hearing
shortly after the court acted in November, and, probable
cause having been found, a revocation hearing was held
on January 17, 1975, with a continuance to February 19
to take the testimony of the probation officer on his
return from leave. A significant portion of the lapse of
time was thus for Sawicki's benefit and did not prejudice
him.

The responsibility for the delay until the court acted in
November rests on the probation authorities but not
without considerable fault on Sawicki's part. The judge
below considered it "incredible" that "no system exists
whereby a supervising probation officer is automatically
notified when one of his probationers is convicted of a
crime or bound over to the grand jury by a district court
judge, or when such a probationer is indicted by a grand
jury."[7] Compare *Commonwealth* v. *White,* 218 Pa.
Super. 188 (1971) (delay in revoking probation was un-
reasonable where conviction leading to revocation was
by the court also supervising the probation, and revoca-
tion was ordered five months after conviction and five

---

[7] As the judge noted, however, under G. L. c. 276, § 85, a pro-
bation officer learning that a defendant in his court, charged with an
offense punishable by imprisonment for more than one year, is on
probation in another court, must communicate with the other pro-
bation officer.

weeks after expiration of the probation period). On the other hand, Sawicki concealed the fact of his arrest and conviction from the probation officer. Sawicki's failure to report after July no doubt contributed to the dragging out of the procedures in his case (even if it was not calculated conduct on his part to make his discharge from probation "automatic"), but confusion in the probation office also played a part. In any event, there is no indication on this record of specific prejudice to Sawicki resulting from the delay.

We answer the question reported for decision, "Yes."

*So ordered.*