PEOPLE v DIAMOND

OPINION OF THE COURT

1. CRIMINAL LAW—PROBATION—REVOCATION OF PROBATION—TIMELY
   REVOCATION—PROBATION VIOLATION HEARINGS.

   The revocation of a defendant's probation should not be reversed
   solely because of inefficiencies which allowed the probationer to
   remain free for several years between the filing of the notice of
   probation violation and the hearing on the violation; the de-
   fendant who could not be located earlier should not be re-
   warded for his evasiveness where during that period of time he
   used several different names and resided at several different
   addresses, and at one time denied under oath that he was on
   probation.

2. CRIMINAL LAW—SENTENCES—CONCURRENT SENTENCES—CREDIT FOR
   TIME SERVED.

   Sentences are to run concurrently, and a defendant sentenced
   upon revocation of probation after a hearing which was delayed
   is to be given credit for time served for another offense where
   the two sentences would have run concurrently had the proba-
   tion been revoked in a timely manner.

DISSENT BY M. J. KELLY, J.

3. CRIMINAL LAW—PROBATION—REVOCATION OF PROBATION—DELAY.

   *A defendant's revocation of probation should be reversed where
   the revocation hearing was not held for several years after the
   filing of the notice of violation of probation because of the
   inefficiencies and ineptitudes in the court, recordkeeping, cor-
   rections, police, and prosecution systems.*

Appeal from Recorder's Court of Detroit, Joseph
A. Gillis, J. Submitted May 11, 1976, at Detroit.
(Docket No. 25484.) Decided August 4, 1976.

REFERENCES FOR POINTS IN HEADNOTES
[1, 3] 21 Am Jur 2d, Criminal Law §§ 567, 568.
[2] 21 Am Jur 2d, Criminal Law §§ 547, 551, 567.

Franklin Diamond was convicted, on his plea of guilty, of assault with intent to rob being armed and placed on probation. Probation was subsequently revoked. Defendant appealed. Remanded, 59 Mich App 581. On remand, the Recorder's Court of Detroit upheld its revocation of probation. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Dominick R. Carnovale,* Chief, Criminal Division, and *Larry L. Roberts,* Assistant Prosecuting Attorney, for the people.

*George Stone,* for defendant.

Before: R. M. MAHER, P. J., and M. J. KELLY and D. C. RILEY, JJ.

D. C. RILEY, J. Following a protracted legal brouhaha, we must finally resolve the issue raised by defendant: where probation authorities and law enforcement officials, owing to haphazard record-keeping, are unable to corral a wayward probationer, failing in his duty to report but leaving scattered clues of his whereabouts, should a court void a subsequent probation revocation? This statement of the issue requires more labor than the answer, for our resolution in this case is a confident "No".

Many of the essential facts leading to this appeal are reported in a previous opinion, *People v Diamond,* 59 Mich App 581; 229 NW2d 857 (1975). At that juncture, the matter was remanded to the Detroit Recorder's Court to resolve certain questions unanswered by the record, 59 Mich App at 587–588. The panel issued the following directive:

"If the trial court finds they did not, then the court should find there has been a waiver of the probation violation in the instant matter. On the other hand, if the court should find the authorities were diligent in their pursuit of defendant, then his conviction should be affirmed". 59 Mich App at 588.

On remand, the Recorder's Court judge, after extensive evidentiary hearings, found that the probation officers acted with reasonable dispatch. The judge's factual findings are too lengthy to report in full. We note only that he concluded that no one intentionally withheld information or intentionally ignored defendant's probation violations. Rather, he concluded that the system, lacking sufficient resources or reasons to track down every probation violator, had performed adequately, if inefficiently.

We emphasize that there was no intentional delay. Absent a particular intent or an active, culpable knowledge, analogies to *In re Colin,* 337 Mich 491; 60 NW2d 431 (1953), are inapplicable. We need not decide what remedy is appropriate when authorities intentionally permit probation violations to continue.[1]

We face instead a situation where defendant somehow slipped between the cracks of the law enforcement-probation-judiciary mosaic. We are somewhat skeptical of defendant's arguments that suggest certain methods for eliminating the "cracks". Were the system to operate as defendant suggests it should, a probationer would forfeit all privacy; the streets would be no different than a prison. That situation would be antithetical to the laudable purposes of probation. While supervision

---

[1] The first *Diamond* panel, 59 Mich App 581; 229 NW2d 857 (1975), by phrasing the remand order in terms of a "waiver", seemed more concerned with intentional behavior of probation officials.

is essential to probation, constant surveillance is not.

When, as with present defendant, the system does not operate efficiently, a probationer may be equally to blame for any delays. The efficacy of probation depends substantially on a probationer's cooperation. That defendant understood this necessity is evidenced by the stern instructions issued by the court when defendant was placed on probation in 1969.

Present defendant admittedly ceased reporting to supervisory probation officials. In fact, his furtiveness was extravagant. It appears that defendant used several different names and resided at seven different addresses during the period in question. During the 1971 guilty plea proceedings mentioned by our dissenting brother, Judge KELLY, defendant, as Jeffrey D. Eckford, flatly denied under oath that he was on probation. Given these facts, it is difficult to place all blame on the system and reward defendant for his evasiveness. We cannot be as benevolent to defendant, nor as reproachful of the public employees, as is our brother, Judge KELLY. We will not overturn the probation revocation solely because of the system's inefficiencies. Considering the cooperative purpose of probation and the particular facts presented here, we affirm the decision of the Detroit Recorder's Court.

We are quick to point out, however, that our affirmance must alleviate any actual prejudice suffered by defendant. The established policy of this state is that sentences are served concurrently. See, *e.g., Browning v Michigan Department of Corrections,* 385 Mich 179; 188 NW2d 552 (1971). Had defendant's probation been revoked in a timely manner, his sentence would have run

concurrently with the 1971 sentence received for attempted breaking and entering. Accordingly, he should be given credit for time served for the 1971 conviction, in addition to the credit already given by the sentencing judge. *Cf., People v Hallaway,* 39 Mich App 74, 76; 197 NW2d 335 (1972).

Affirmed, with modification of sentence.

R. M. MAHER, P. J., concurred.

M. J. KELLY, J. *(dissenting).* The remand order quoted by the majority ordered the trial judge to affirm if he found the authorities were diligent in their pursuit of defendant. What authorities? House of Correction authorities, Recorder's Court clerks and personnel, probation officers, Detroit police officers, magistrates, judges, computer operators?

They were all incredibly sloppy, careless and negligent. The trial judge found that:

" * * * [T]he Police Identification Department has been fouled up for at least the last 10 years and gets more snarled up each year, as the testimony indicates.

* * *

"The police department did not do its job.

* * *

"The probation department starts a separate file on each case. So Mr. Diamond, alias Eckford, has been through the system several times in Recorder's Court. Each time he has a separate file with a separate number.

"Each time he entered the County Jail he had a separate card. I think there were—testimony indicated he had been in the Wayne County Jail nine times. But there is no cross check between prior cards unless there is some reason to look for it."

When he was identified under both names at

sentencing on April 2, 1971, a month and a half before the warrant in question was issued out of the same Recorder's Court, both names were noted on the written order of conviction: "However, when the mittimus was typed upstairs by a clerk, the typewritten copy had the name Jeffrey D. Eckford only." He was then sent to the Detroit House of Correction who had had him before as "Diamond" in 1969 · but the House of Correction either did not put the two together, or if they did, failed to notify anyone else.

He was back in the same court in June of 1972 for violation of the narcotics act. He was released on bond, failed to appear for trial and in August of '72 a capias was issued for him. "[B]ut it never got in the file until June 14, 1973, apparently, 10 months later, the clerk finally put the thing in the file." Four days before the capias was issued he was arrested on Chicago Boulevard in a house-breaking: "The police department was not able to make a case and never brought him to trial." In March of 1974 he was arrested for shoplifting and somehow his two identities were put together whereupon this probation hearing was held and he was finally sentenced.

Such colossal, bungling ineptitude should be exposed and the bureaucrats who tolerate it identified.

I would reverse.