COMMONWEALTH *vs.* LINDEN C. WARD.

Middlesex. February 9, 1983. — March 2, 1983.

Present: GRANT, KAPLAN, & GREANEY, JJ.

*Practice, Criminal,* Probation.

In the case of a convicted defendant serving a term of probation, a judge's order, "Probation continued to the original expiration date," made when the defendant was subsequently in court on an apparently unrelated matter, was no more than a decision not to extend or revoke probation at that time, and did not preclude the exercise of whatever power the court might have to revoke his probation in the event he was surrendered for that purpose after expiration of the probation term. [391]

In a probation revocation proceeding initiated after the expiration of the probation term, a further hearing was to be held to determine whether the defendant's probation officer had acted with reasonable promptness in light of all the circumstances in surrendering the defendant and securing his presence in court. [391-393]

INDICTMENT found and returned in the Superior Court on April 7, 1977.

A proceeding for revocation of probation was heard by *Garrity,* J.

*Michael S. Gallagher* for the defendant.

*Claudia R. Sullivan,* Assistant District Attorney, for the Commonwealth.

GRANT, J. On October 17, 1977, the defendant was convicted by a jury on an indictment for armed robbery (No. 77-1570) which had been returned against him in the Superior Court in Middlesex County. On October 28, 1977, he was placed on straight probation (G. L. c. 276, § 87) for a period of four years. He was brought into court on April 25, 1979, for some purpose which resulted in a clerk's minute and a docket entry of "Probation continued to the original expira-

tion date." In August of 1981 the defendant was convicted in the District Court in Cambridge on a complaint for breaking and entering in the nighttime and given a one-year sentence in the house of correction in Billerica, three months to be served and the balance suspended.

The defendant was not brought into court at the stated expiration of his term of probation on October 28, 1981. His probation officer seems not to have learned of the conviction for breaking and entering until December 15, 1981. On February 17, 1982, he sent a surrender notice to the defendant and to his trial counsel. A docket entry on February 23, 1982, reads, "Off the list at the request of the Probation Department." On the following day the case was continued until March 4, 1982, when the defendant was taken into custody and held without bail.

On March 9, 1982, the defendant's probation officer held an administrative hearing on probable cause (see *Gagnon* v. *Scarpelli*, 411 U.S. 778, 781-782, 786 [1973]) and formally surrendered the defendant on the indictment for robbery, as well as on another indictment for assault and battery by means of a dangerous weapon (No. 76-4802) which is of no direct concern in this case. A Superior Court judge immediately conducted a summary hearing on the question of revocation of probation on both indictments. Counsel for the defendant said nothing when the probation officer responded in the affirmative to the judge's question as to whether the defendant was still on probation on the indictment for robbery. Counsel did not dispute the fact of the conviction of breaking and entering, suggested no reason why probation should not be revoked on either indictment, and appears to have contented himself with a plea for leniency in the sentence which he anticipated would be imposed on the indictment for robbery. The judge took notice of the defendant's extensive criminal record,[1] revoked the

---

[1] How the judge became aware of so much of the defendant's criminal record as was not disclosed by the two indictments then before him is something of a mystery because, so far as can be determined from the por-

probation on both indictments, revoked the suspension of the sentence which had originally been imposed on the indictment for assault, and, on the indictment for robbery, imposed a sentence to M.C.I., Walpole, for a term of from nine to ten years, to be served on and after the expiration of the sentence on the indictment for assault.

On March 26, 1982, the defendant filed a motion styled as one brought under Mass.R.Crim.P. 30(a), 378 Mass. 900 (1979), by which he challenged the legality of the sentence which had been imposed on the indictment for robbery.[2] The motion and its supporting papers raised questions of law (1) whether the court's order of April 25, 1979, had operated so as to terminate the defendant's probation on October 28, 1981, because the defendant had not been surrendered prior to that date and (2) whether (if [1] should be answered in the negative) the court had lost the power to act by as late as March 9, 1982, because of an asserted failure on the part of the probation officer to surrender the defendant by October 28, 1981, or within a reasonable time thereafter. The motion was heard and denied on April 1, 1982, by the judge who had presided over the revocation and sentencing proceedings.[3] The defendant appealed.

tions of the proceedings which have been transcribed and put before us, the so called "blue sheets" were never officially brought to the judge's attention. We pass any irregularity in that respect, as well as possible errors in the judge's reading and interpretion of the blue sheets, because the defendant has made nothing of either point.

[2] We also pass the points, unnoticed by the district attorney, (a) that a motion under rule 30(a) did not lie because the defendant was not then imprisoned on the indictment for robbery and (b) that no notice of the motion appears to have been given to the Attorney General under rule 30(c)(1). Nor has any argument been advanced that the defendant should have taken a direct appeal from the sentence on the indictment for robbery. See *McHoul* v. *Commonwealth*, 365 Mass. 465, 468, 469 (1974). We consider the questions raised by the motion because they go to the court's power to act in the circumstances.

[3] The order read as follows: "After a hearing DENIED. The attached Record of Supervision indicates that the Defendant's probation, which began on October 28, 1977, was never discharged or terminated and thus remained in effect on March 9, 1982. See *Comm.* v. *Sawicki* [369 Mass.

1. There is no merit to the contention that the court's cryptic order of April 25, 1979 ("Probation continued to the original expiration date"), constituted a formal order concerning the termination of the defendant's probation (see *Commonwealth* v. *Sawicki*, 369 Mass. 377, 380-383 [1975]) or that it had the effect of precluding any proceedings for the revocation of the defendant's probation unless he should be surrendered for that purpose prior to the anticipated expiration of the term on October 28, 1981. The record does not disclose why the defendant was brought in on April 25, 1979 (appellate counsel did not know why at the argument), but if we assume in the defendant's favor that he was surrendered on that date on some question of extension or revocation of probation, we see nothing more in the quoted order than an exercise of judicial discretion not to extend or revoke the probation at that time. Least of all do we see any intention on the part of one judge to prevent (if he could) another judge from exercising whatever powers he might have to extend or revoke the defendant's probation by reason of the defendant's subsequent commission of another offence.

2. There is substance to the second point raised by the motion. As the *Sawicki* case makes clear, the court's power to extend or revoke a defendant's probation after the expiration of its original term because of the defendant's failure to comply with one or more of the conditions of his probation (see Rule 56 of the Superior Court [1974]) during the term turns on whether both the probation officer and the court act with reasonable promptness in light of all the circum-

---

377 (1975)]. The attached Court record indicates several offenses while the defendant was on probation, and in my opinion warranted the sentence imposed. To rule otherwise would be a gross miscarriage of justice." The "Record of Supervision" referred to consists of a copy of a series of notes which the defendant's probation officer had reconstructed in December of 1981 and which apparently chronicled his efforts to bring the defendant to book once he learned of the conviction of breaking and entering. A copy of that record had been attached to the defendant's motion. The "Court record" referred to consisted of the blue sheets already referred to in n.1 hereof.

stances of the particular case, including the possibility of specific prejudice to the defendant resulting from delay in bringing matters to a head.[4]  369 Mass. at 380, 383, 384-387. No lack of alacrity is to be attributed to the judge in this case, but there is a question whether, in light of all the circumstances, the probation officer acted with reasonable promptness in initiating surrender proceedings and actually bringing the defendant into court for that purpose.  The judge, in his order denying the defendant's motion (n.3 hereof), appears simply to have assumed on the basis of the *Sawicki* case that he continued to have power to revoke a probation which, according to its stated term, had expired more than four months before the defendant was surrendered.  We find ourselves unable to read into that order any recognition of (much less any finding or ruling on) the question whether the probation officer had acted with reasonable promptness.  It follows that we are at a loss to know whether the judge continued to have the power to revoke the probation at the time he purported to do so.

The defendant points to a portion of the record of supervision (see n.3 hereof) which indicates an interval of approximately seven weeks between the date the probation officer first learned of the defendant's conviction of breaking and entering and the date when the defendant was actually surrendered, and urges us to determine the question of reasonable promptness for ourselves.  The district attorney points to another portion of the same record which suggests that the defendant deceived his probation officer as to when the complaint for breaking and entering was scheduled for trial and to a still further portion which suggests that the officer may have delayed in surrendering the defendant in order to learn the fate of additional criminal proceedings against him which have not previously been mentioned. See *Rubera* v. *Commonwealth*, 371 Mass. 177, 181-182 (1976). What neither side appears to recognize is that there has been no finding as to the truth of any of the matters recited

---

[4] There is no suggestion of any such prejudice in the present record.

in that record. Indeed, there may be additional facts bearing on the question of reasonable promptness on the part of the officer which are not even suggested by his record but which could be brought out and found at an evidentiary hearing which is not within our province.

We think the ends of justice require that the sentence imposed on indictment No. 77-1570 be vacated and that the case stand for an evidentiary hearing in the Superior Court and for detailed findings of fact, together with a ruling of law based on those findings, on the question whether the probation officer surrendered the defendant with reasonable promptness in light of all the circumstances. If such findings and ruling are in the defendant's favor, an order is to be entered which formally discharges the probation; if the findings and ruling are in the Commonwealth's favor, the judge may proceed as if the defendant had been formally surrendered during the original term of his probation. If the defendant is not now being held on any charge other than said 77-1570, he may apply to the court to be released on bail pending the required hearing.[5]

*So ordered.*

---

[5] Compare *Rubera* v. *Commonwealth,* 371 Mass. at 179.