COMMONWEALTH vs. CLARENCE A. BAILLARGEON.

No. 89-P-301.

Worcester. September 15, 1989. - November 8, 1989.

Present: ARMSTRONG, KAPLAN, & SMITH, JJ.

*Practice, Criminal*, Probation.

A defendant was not entitled to be discharged from imprisonment on the ground that the proceedings to revoke his probation had been unreasonably delayed, where, although the probation violation warrant charging violation in another State was not executed until some two years after the probationary period had expired, a judge could properly conclude that the Massachusetts authorities had acted with reasonable expedition in light of the defendant's elusive behavior. [20-22]

INDICTMENT found and returned in the Superior Court Department on October 8, 1980.

A motion for postconviction relief, filed on December 8, 1987, was heard by *Herbert F. Travers, Jr.*, J.

*James W. Rosseel* for the defendant.

*Claudia R. Sullivan*, Assistant District Attorney, for the Commonwealth.

KAPLAN, J. *Statement.* Under sentence of five years' imprisonment at M.C.I., Concord, six months to be served, balance suspended, with probation for two years, the defendant committed sundry violations of probation during the probationary period. A warrant issued during that period but was executed upon the defendant some two years after the period expired. In the proceedings before a judge of the Superior Court to revoke probation, the defendant tendered no substantive defenses; probation was revoked, and the defendant was remitted to serve under the Concord suspended sentence, which had now fallen in. He entered upon that confinement.

Later the defendant moved under Mass.R.Crim.P. 30(a), 378 Mass. 900 (1979), to be discharged from confinement on

the alleged ground that the proceedings to revoke probation had been unreasonably delayed. After hearing, a judge of the Superior Court denied the motion, filing findings, rulings, and order. The defendant has appealed from the denial.

We choose to address ourselves to the appeal on the merits, overlooking the circumstance that the defendant did not raise the question of delay at the hearing to revoke probation and took no appeal from the order of revocation and sentence.[1] On the merits we conclude, considering the conduct of both the probation authorities and the defendant, that the delay was not "unreasonable" so as to invalidate the sentence imposed.[2] It becomes necessary to look at the situation more closely.

*Details.*[3] On September 9, 1980, the defendant, a juvenile, was charged with breaking and entering, armed, and on October 30, 1980, he pleaded guilty after indictment as an adult and was placed on "straight" probation for two years on and after a certain previous sentence. Within the period of probation, on March 10, 1982, the defendant was charged with breaking and entering and other crimes, and on March 18, 1982, he was convicted and sentenced to nine months in a house of correction. On April 29, 1982, the defendant was surrendered on the "straight" probation and was sentenced to five years at M.C.I., Concord, six months to be served after the sentence he was then serving on the March, 1982, conviction, balance suspended, with probation for two years. This latter two-year probation can be taken to have commenced to run from November 19, 1982, with a termination date of November 18, 1984.[4]

---

[1]The question whether this circumstance might abort a rule 30(a) application was raised but not decided in *Commonwealth* v. *Ward*, 15 Mass. App. Ct. 388, 390 n.2 (1983).

[2]The defendant in argument sometimes makes a due process claim. We need not consider how far constitutional protections extend to probation revocation, for on any view the delay was not unreasonable. See *Commonwealth* v. *Sawicki*, 369 Mass. 377, 385 n.6 (1975).

[3]We draw on the judge's findings with some reference to the transcripts of hearings.

[4]The six months to be served escaped notice, and the probationary period is calculated as indicated.

In January, 1983, the defendant applied to the probation office in Worcester and received permission to move to Florida and have his probation supervised there. He moved to Florida on January 13, 1983. He commenced reporting to the Florida probation authorities at Pompano Beach. In October, 1983, Florida probation reported to Massachusetts probation that the defendant could not be located at the address he had given in Pompano Beach, and had not reported since February, 1983. The violation, however, was taken to have commenced in June, 1983.[5] Florida recommended that the defendant be "violated" and a warrant be procured in Massachusetts. The Commonwealth obtained a warrant on December 22, 1983.[6]

In the latter part of 1984, the defendant pleaded guilty in a Florida court to grand theft and battery and on September 12, 1984, he was sentenced to four years' probation. It is indicated that around that time the defendant was living in Fort Lauderdale, Florida. The record suggests that Massachusetts learned of the convictions upon receipt of a form on January 11, 1985. In the meantime the defendant appears to have moved to an undetermined place in New York, by permission, as he claims, of Florida authorities.

On January 8, 1987, the defendant was arrested in Worcester for possessing burglarious tools and for other crimes. He pleaded guilty and on January 28 received concurrent eighteen-month house of correction sentences.

On January 9, 1987, the outstanding Massachusetts probation violation warrant was served on the defendant. The notice of surrender charged (1) failure to report to the Florida probation authorities from June to November, 1983; (2) whereabouts unknown: Florida unable to reach the defendant

---

[5]This deferred date appears to be connected with a temporary loss of the defendant's Florida file. The defendant claimed he had moved to an address in Tamarac, Florida, and reported to authorities there.

[6]In March, 1984, Florida authorities inquired of Massachusetts about the present status and were told in May, 1984, that the warrant had issued, the defendant remained in default, and Florida could drop its interest in the case.

at the Pompano Beach address; and (3) adjudication on September 12, 1984, in Florida for theft and battery.

After hearing, a judge of the Superior Court found violations and on March 11, 1987, committed the defendant under the five-year Concord sentence (actually the judge imposed a term of four and one-half years[7]).

The present rule 30(a) application was initiated on December 8, 1987, and had the negative result mentioned above.

*Judge's decision.* The judge in deciding the rule 30(a) motion found — and we see no reason to disagree — that the defendant did not report to the Florida or Massachusetts authorities for a period of time prior to October, 1983, when Florida corresponded with Massachusetts. He had also changed his address without notice to the Florida authorities before the date of that letter. Massachusetts followed up promptly by obtaining a warrant. Then the defendant committed further offenses in Florida in September, 1984. Thus the violations charged in the notice of surrender of January, 1987, were made out (if, indeed, the ruling in the probation revocation proceeding was open to reexamination on the rule 30[a] motion).

The defendant attempted to palliate his violations by claiming that he received permission from the Florida authorities to move and transfer his Massachusetts probation to New York, and that he reported to New York authorities. The judge found the defendant to be untruthful in claiming that he received that permission. The judge noted that Florida would have had no power to grant it. He inferred that the defendant received permission, but related to the Florida probation, and that the Florida authorities that granted it were not then aware that the Massachusetts probation was outstanding.

The judge concluded on all the facts that the Massachusetts authorities had no opportunity to proceed to surrender

---

[7]This was on the assumption that the six-month part of the Concord sentence had been served. See note 4 *supra.*

the defendant until the arrest in Massachusetts, and thus did not unreasonably delay.

*Discussion.* There can be no violation of probation unless committed during the probationary period, but it is settled in the Commonwealth that in suitable circumstances probation may be revoked after that period. However, it must occur within a "reasonable" time. See *Commonwealth* v. *Sawicki*, 369 Mass. 377, 384-387 (1975); *Commonwealth* v. *Odoardi*, 397 Mass. 28, 35 (1986); *Commonwealth* v. *Ward*, 15 Mass. App. Ct. 388, 391-393 (1983). Ordinarily there can be little excuse for delay where the probationer is available to be surrendered: in such a case "[a] protracted delay would not only make the eventual hearing less effective, but would also work against the goal of rehabilitation of the offender by adding to his anxiety and making him further distrustful of legal procedures." *Sawicki*, at 385. Such deliberate delay of revocation proceedings could overhang the probationer unfairly as a threat. See, for an instance of undue delay where the probationer was in easy reach over a long period of time, *United States* v. *Gernie*, 228 F.Supp. 329 (S.D.N.Y. 1964).

Suppose, however, that the probationer puts obstacles in the way of the officials who are to surrender him and is himself responsible for delay or contributes materially to it, as where he plays a game of hide and go seek to confound the warrant server. As was recognized in *Sawicki* (at 386-387), this naturally affects the considerations entering into a finding of what is a reasonable time, for the probationer then has himself to blame for the protraction of his reckoning with the law. Such "prejudice" as befalls him is of his own making. See *Sawicki*, at 387.

In the present case the judge thought the Massachusetts authorities were acting with reasonable expedition in the light of what they knew of the defendant's whereabouts. The defendant was showing no zeal in disclosing where he could be found — yet keeping the authorities informed is a probationer's elementary duty. See Rule 56 of the Superior Court (1974). Indeed the defendant has had trouble from the outset of his criminal career in attending to his obligations as a pro-

bationer: the four and one-half year sentence stems back to his violation of the "straight" probation cast on him in 1980.

If it be assumed that the Massachusetts or Florida authorities or both were less than vigilant in checking up on the defendant and in communicating with each other, still the defendant is not helped: he cannot demand spit and polish efficiency of these agencies, while choosing to be unsubmissive and elusive himself. We agree with the remarks of the Michigan Court of Appeals in a comparable case, *People* v. *Diamond*, 70 Mich. App. 512, 514-515 (1976) (2-1 decision): "Were the system to operate as defendant suggests [he had suggested methods for improving the efficiency of the officials in pursuing probationers], a probationer would forfeit all privacy; the streets would be no different than a prison. That situation would be antithetical to the laudable purposes of probation. While supervision is essential to probation, constant surveillance is not. . . . The efficacy of probation depends substantially on a probationer's cooperation." Thus: "[W]here probation authorities and law enforcement officials, owing to haphazard record-keeping, are unable to corral a wayward probationer, failing in his duty to report but leaving scattered clues of his whereabouts, should a court void a subsequent probation revocation?" *Id.* at 513. The court's answer was "No." See also *Commonwealth* v. *Clark*, 225 Pa. Super. 171, 174 (1973); *Commonwealth* v. *Gaus*, 300 Pa. Super. 372, 374-377 (1982).[8]

The probation authorities will recognize that the delay, if unimpeachable and understandable on the present facts, was also regrettable. Military precision in the management of

---

[8]In the *Diamond* case the court, pursuant to a Michigan policy that "sentences are served concurrently," directed that the defendant receive credit, on the sentence imposed for probation violation, for time served on another criminal sentence, where the two sentences would have been concurrent if probation had been revoked in more timely fashion. *Id.* at 515-516. What effect may be given, in any possible future sentencing of the present defendant, to the fact of his having completed service on the four and one-half year sentence, will be for decision by those later courts.

probation is not possible, or even wanted, but firm administration remains a necessary goal.

*Order affirmed.*