**Fred SAUNDERS, Petitioner,**

v.

**MICHIGAN DEPARTMENT OF CORRECTIONS, Respondent.**

**Civ. A. No. 75–70323.**

United States District Court, E. D. Michigan S. D.

Jan. 29, 1976.

John R. Urso, Detroit, Mich., for petitioner.

Patrick Aseltyne, Asst. Atty. Gen., Lansing, Mich., for respondent.

## MEMORANDUM OPINION

FEIKENS, District Judge.

Fred Saunders, an inmate of Southern Michigan Prison at Jackson brought this habeas corpus proceeding, claiming that his detention is unlawful because Michigan authorities waived jurisdiction over him by their failure to use reasonable diligence in executing a parole violation warrant issued against him. Respondent's motion to dismiss the petition was denied and petitioner was given the opportunity to prove that the Michigan authorities knew or should have known of his whereabouts and that, in any event, they did not use reasonable diligence in trying to find him. *See* Memorandum Opinion filed August 5, 1975.

A hearing was held November 20, 1975. Both Saunders and Earl Henry Nill, who was Administrative Assistant, Bureau of Field Services, Michigan Department of Corrections, during the relevant period testified.

Five years elapsed between issuance of the parole violation warrant and its final execution in September, 1969. Throughout this period Saunders lived in Chicago, Illinois. He was arrested several times in Chicago and in 1966, 1967 and 1968 he was convicted and sentenced to short jail terms there. The parole violation warrant was finally executed when Saunders was apprehended in Michigan and it was discovered that he was wanted as a Michigan parole violator.

Saunders testified that he had never reported his whereabouts to Michigan corrections authorities; indeed, when first arrested in Chicago he had used an alias in an attempt to conceal his identity and to prevent his return to Michigan. He stated also that he had resided at five different Chicago addresses during the period and that he had taken care to work where his status as a Michigan parole violator would not be discovered.

At the hearing Saunders said that he believed his true identity had been discovered by Federal Bureau of Investigation agents when he was first arrested in Chicago and that his name, criminal record and Chicago addresses were put into FBI files. Saunders argues that Michigan authorities had a duty to inquire of the Chicago authorities as to his possible whereabouts since they knew that he had lived there for a time before his initial Michigan arrest. He maintains also that Michigan authorities had a duty to search the FBI files for indications of his whereabouts. According to Saunders, Michigan authorities had constructive knowledge that he was in Chicago since they failed to make these obvious inquiries which, if made, would have revealed his whereabouts.

Nill testified that during the period shortly after Saunders left Michigan there were over one thousand parolees who had absconded. At that time no state employee devoted all his time to searching for these parole violators. Nevertheless, a letter was sent to Saunders' father in Memphis, Tennessee in November, 1964, asking if he knew where Saunders was. A negative response to the letter was received by the Michigan authorities in July, 1965. Additionally, Michigan law enforcement officials were informed that Saunders was wanted for parole violation and told to watch for him. Michigan authorities did nothing more to locate Saunders.

The United States Court of Appeals for the Sixth Circuit has defined the rules governing these situations in two cases: *Greene v. Michigan Department of Corrections,* 315 F.2d 546 (6th Cir. 1963) and *Greene v. Michigan Department of Corrections,* 339 F.2d 139 (6th

Cir. 1964), *cert. denied,* 381 U.S. 919, 85 S.Ct. 1550, 14 L.Ed.2d 439 (1964) (hereinafter referred to as *Greene I* and *Greene II,* respectively). Both cases grew out of the same set of facts and involved a habeas corpus proceeding challenging the jurisdiction of Michigan to execute a parole violation warrant nearly ten years after its issuance.

In *Greene I* the court of appeals remanded the case to the United States District Court for the Eastern District of Michigan for an evidentiary hearing to determine whether Michigan authorities had acted with reasonable dispatch to execute the parole violation warrant. The court specifically held that Department of Corrections knowledge of a parolee's whereabouts could be actual or constructive and could be proved by direct or circumstantial evidence. *Greene I* at 548. As indicated by the Michigan Supreme Court in *Deputy Commissioner of Agriculture v. O & A Electric Co-Operative, Inc.,* 332 Mich. 713, 716, 52 N.W.2d 565, 567 (1952), *cited in Greene I* at 548:

> "A person is chargeable with constructive notice when, having the means of knowledge, he does not use them. If he has knowledge of such facts as would lead any honest man, using ordinary caution, to make further inquiries and does not make, but studiously avoids making, the obvious inquiries, he must be taken to have notice of those facts which, had he used ordinary diligence, would have been readily ascertained."

On remand and after a trial the district court granted the writ of habeas corpus. This was appealed and in *Greene II* the United States Court of Appeals for the Sixth Circuit reversed, with direction to dismiss the petition for the writ.

The petitioner in *Greene I* and *Greene II* had been arrested and released in the state of Washington some time after the Michigan parole violation warrant was issued, but before it was executed. The Michigan State Police were informed of this two months after its occurrence, but they neglected to transmit the informa-

tion to the Michigan Department of Corrections. Michigan authorities never asked those in Seattle if they knew where Greene was although Greene did remain in Seattle for some time after his arrest there. It was this set of circumstances which led the district court to conclude that the Michigan Department of Corrections had had constructive knowledge of Greene's whereabouts and had waived jurisdiction over Greene by its neglect to execute the parole violation warrant.

The Sixth Circuit, however, noted that the Michigan State Police had never known where Greene was; they had only known where Greene had been two months earlier. The court held that this did not constitute constructive knowledge. Nor was the fact that he was arrested, convicted and sentenced in several states while he was an absconder from Michigan enough to constitute constructive knowledge of his whereabouts. The Sixth Circuit declared:

> "We will not hold that such practice [failure to send inquiries to every state where a parole violator might be concealed] confers on Michigan parole violators a constitutional immunity against being taken into custody merely because there was delay in locating them."

*Greene II* at 141.

■ Actual knowledge of a parolee's whereabouts by the Department of Corrections would permit an inference of waiver if not acted on by them. Constructive knowledge of a parolee's whereabouts would permit an inference of waiver only if it were shown that the Department of Corrections made a decision not to act. Mere inaction in such a situation would not permit an inference of waiver.

The Department of Corrections had no actual knowledge of Saunders' whereabouts.

■ Here the Michigan authorities had constructive knowledge of Saunders' whereabouts since they knew that there was a likelihood of his being in Chicago

and they had the means to find this out. However, this is not sufficient to cause a waiver of jurisdiction. Saunders must show some affirmative action by the Department of Corrections from which a decision not to execute the warrant may be reasonably inferred. Mere inaction is not enough unless it can be shown to be an intentional failure to act. Saunders has not shown that the Michigan authorities made any such decision *not* to look for him. There was, therefore, no waiver of jurisdiction over him.

Accordingly, Saunders' petition for a writ of habeas corpus is denied. An order is entered herewith.