On April 8, 1976, an individual using the name Larry Wayne Barnett (hereinafter Barnett) pleaded guilty to forgery in the State of South Carolina, and was sentenced to a term of *957 imprisonment of seven years. On August 18, 1976, Barnett escaped from custody and fled to New York. In 1993, South Carolina officials prepared extradition papers, but the then-Governor of South Carolina, Carroll A. Campbell, Jr., refused to sign the authorizations necessary to initiate extradition, determining that “exceptional circumstances” weighed against extradition, including Barnett’s alleged rehabilitation, long-term marriage, work history, and severe health problems.
No further action was taken by the State of South Carolina to extradite Barnett until October 2005, when an individual using the name Howard Glenn Blake was detained at JFK Airport after a computer entry indicated that he was wanted in South Carolina as Larry Wayne Barnett. On January 9, 2006, the then-Governor of South Carolina, Mark Sanford, signed a demand for the extradition of Barnett, stating that he had been charged in that state with the crime of escape from legal custody. Annexed to the demand was, inter alia, a copy of an affidavit sworn before a judge in South Carolina in 1993, attesting that Barnett had escaped from custody while serving a sentence of imprisonment for the crime of forgery, and a copy of a 1993 warrant for the arrest of Barnett which was issued on that affidavit. On January 12, 2006, then-New York State Governor George E. Pataki signed a warrant for the extradition of “Larry Wayne Barnett, a/k/a Larry Wayne Barnette, a/k/a Larry W. Barnett, a/k/a Larry W. Barnette, a/k/a Wayne Barnette, a/k/a Howard Glenn Blake” to South Carolina on the charge of escape.
On April 27, 2006, Blake, alleged to be Barnett (hereinafter the petitioner), filed an amended petition for a writ of habeas corpus, seeking to vacate the extradition warrant upon the grounds of, inter alia, waiver, estoppel, and denial of due process. He reserved his right to contest whether he was the person named in the extradition warrant. The Supreme Court, Suffolk County, sustained the writ (see People ex rel. Blake v Pataki, 13 Misc 3d 247 [2006]), but this Court reversed, reinstated the extradition warrant, and remitted the matter to the Supreme Court for further proceedings (see People ex rel. Blake v Pataki, 57 AD3d 583 [2008]). This Court granted the petitioner leave to appeal our decision and order to the Court of Appeals, and the Supreme Court stayed further proceedings on the extradition warrant pending determination of that appeal, including a hearing to determine whether the petitioner was, in fact, the person wanted in South Carolina as Larry Wayne Barnett.
On October 2, 2009, while that appeal was pending, New York State officials received a letter from an extradition coordinator in then-Governor Sanford’s office notifying them of the “appar *958 ently inadvertent withdrawal” of the 1993 warrant for the arrest of Barnett. The extradition coordinator annexed a copy of a letter from the Inspector General of the South Carolina Department of Corrections, which stated that his office had discovered that the 1993 warrant had been “erroneously dismissed.” The Inspector General stated that “[t]he Department of Corrections had not been aware of this dismissal when it sought to have Barnett extradited to South Carolina. During the entire process that had been undertaken by the authorities of Suffolk County New York, the South Carolina Department of Corrections operated under the good faith [belief] that the 1993 warrant remained valid.” The Inspector General stated that, on June 2, 2009, a new warrant had been issued for the arrest of Barnett to replace the 1993 warrant. The extradition coordinator annexed a copy of the warrant dated June 2, 2009, to his letter, and stated that South Carolina was “renewing] and affirming]” its earlier demand for the extradition of Barnett.
On January 12, 2010, the Court of Appeals affirmed this Court’s decision and order reinstating the extradition warrant (see People ex rel. Blake v Pataki, 13 NY3d 912 [2009]).
The petitioner then filed a second amended petition for a writ of habeas corpus, seeking to vacate the extradition warrant upon the ground, among others, that it was defective because the 1993 South Carolina warrant was not in effect when the extradition warrant was issued. The Supreme Court sustained the writ. George E. Pataki appeals, and we reverse.
The Extradition Clause of the United States Constitution provides: “A person charged in any State with Treason, Felony, or other Crime, who shall flee from Justice, and be found in another State, shall on Demand of the executive Authority of the State from which he fled, be delivered up, to be removed to the State having Jurisdiction of the Crime” (US Const, art IV, § 2, cl 2).
In New York, which has enacted the Uniform Criminal Extradition Act, “[n]o demand for the extradition of a person charged with crime in another state shall be recognized by the governor unless . . . accompanied by a copy of an indictment found or by information supported by an affidavit in the state having jurisdiction of the crime, or by a copy of an affidavit made before a magistrate there, together with a copy of any warrant which was issued thereon, or by a copy of a judgment of conviction or of a sentence imposed in execution thereof, together with a statement by the executive authority of the demanding state that the person claimed has escaped from confinement or has broken the terms of his bail, probation or parole” (CPL 570.08).
*959 The purpose of the Extradition Clause is to enable each state to bring offenders quickly to justice by effectively erasing state borders so as to enlarge the territory within which the demanding State may make a lawful arrest, thus precluding any State from becoming a sanctuary for fugitives from the justice of another (see Michigan v Doran, 439 US 282, 287 [1978]; Biddinger v Commissioner of Police of City of New York, 245 US 128, 132-133 [1917]). In order to facilitate this purpose, “extradition proceedings are summary in nature and the statutory provisions are to be liberally construed” (People ex rel. Kotch v District Attorney of Kings County, 170 AD2d 632, 633 [1991]).
“It is . . . well established that once the Governor of an asylum State has directed extradition, ‘a court considering release as habeas corpus can do no more than decide (a) whether the extradition documents on their face are in order; (b) whether the petitioner has been charged with a crime in the demanding state; (c) whether the petitioner is the person named in the request for extradition; and (d) whether the petitioner is a fugitive’ ” (People ex rel. Strachan v Colon, 77 NY2d 499, 502 [1991], quoting Michigan v Doran, 439 US at 289; see People ex rel. Angell v Scoralick, 265 AD2d 354 [1999]).
Here, the extradition documents on their face are in order. Though the 1993 warrant which is part of those documents has been dismissed, the letters stating that it has been dismissed are not part of the extradition documents, so they do not affect the facial sufficiency of those documents. The letters only affect the second prong of the analysis, whether the petitioner has been charged with a crime in the demanding state. We are satisfied that he has, despite the fact that the 1993 warrant for his arrest has been dismissed. The extradition documents include a copy of Barnett’s indictment for the crime of forgery, a copy of his signed plea of guilty to that charge, a copy of a document, signed by the sentencing judge, showing that he was sentenced for that crime to a term of imprisonment of seven years, and a copy of an affidavit sworn before a judge attesting that he escaped from custody while serving that sentence. The fact that the warrant issued on the basis of that affidavit may have been dismissed is immaterial, since a plain reading of CPL 570.08 demonstrates that the documents required to accompany a demand for extradition are described in the disjunctive, and the extradition documents here clearly show that Barnett has been charged with the crime of escape in South Carolina. This is particularly the case since South Carolina extradition officials state that they are still seeking Barnett’s extradition.
In addition, “[w]here extradition is sought based upon an *960 escape from confinement, the demand need only be accompanied by a copy of the sentence together with a statement by the executive authority of the demanding State that the person claimed has escaped from confinement (CPL 570.08)” (People ex rel. Perry v Flynn, 59 AD2d 591, 591 [1977]). Here, the extradition documents, liberally construed, also show that Barnett is being sought based upon an escape from confinement. These papers, together with the statement in then-Governor Sanford’s extradition demand that Barnett had escaped from legal custody, are sufficient to support the extradition warrant (see People ex rel. Perry v Flynn, 59 AD2d 591 [1977]; see also Hall v Cronin, 196 Colo 333, 335, 585 P2d 286, 288 [1978] [construing “form of demand” section of Colorado’s version of the Uniform Criminal Extradition Act which is identical to CPL 570.08 and reasoning, “We hold that a requisition by a Governor may refer to, annex and authenticate accompanying papers ... if together they meet statutory requirements”]).
The petitioner’s remaining contentions are without merit.
However, the question of whether the petitioner is the person named in the request for extradition must be determined at a fact-finding hearing (see People v Miller, 74 Misc 2d 806 [1973]). Accordingly, we remit the matter to the Supreme Court, Suffolk County, for a hearing on that question. Angiolillo, J.P, Dickerson, Belen and Miller, JJ., concur.